**In re AROCHEM CORPORATION,
AroChem International, Inc.,
Debtors.**

**Bankruptcy Nos. 92–50505, 92–50506.**

United States Bankruptcy Court,
D. Connecticut.

May 10, 1995.

Timothy Miltenberger, E. Huntington Deming, Coan, Lewendon, Royston, Deming & Gulliver, New Haven, CT, for Richard Coan, Trustee.

Patricia Beary, Asst. U.S. Trustee, Office of U.S. Trustee, New Haven, CT.

Andrew Frackman, O'Melveny & Myers, New York City, for Victory Oil Co. and Eric C. Johnson.

Michael A. Caddell, Keith P. Ellison, Caddell and Conwell, Houston, TX, and James C. Graham, Pepe and Hazard, Hartford, CT, for Trustee, Essex Energy, Inc., Edwin Wells, Stetson Capital Corp. and Stetson Petroleum & Petrochemical Ventur.

Deirdre Martini, U.S. Attorney's Office, Bridgeport, CT, for I.R.S.

William S. Fish, Tyler, Cooper & Alcorn, Hartford, CT, for Shantou Ocean Enterprises Group, Bank Brussels Lambert and Skopbank.

Wilbur Foster and Richard C. Tufaro, Milbank, Tweed, Hadley & McCloy, New York City, for Chase Manhattan Bank, N.A., Banque Indosuez and Swiss Bank Corp.

Roger Juan Maldonado, Teitelbaum, Hiller, Rodman, Padem & Hidsher, P.C., New York City, for Government Development Bank for Puerto Rico and Treasury Dept. for Commonwealth.

Katherine A. Burroughs, Hebb & Gitlin, P.C., Hartford, CT, for CORCO (Commonwealth Oil Refining Co., Inc.).

## MEMORANDUM AND ORDER ON TRUSTEE'S APPLICATION TO EMPLOY ATTORNEY

ALAN H.W. SHIFF, Bankruptcy Judge.

Richard M. Coan, the Chapter 7 trustee for the bankruptcy estates in these administratively consolidated cases, seeks court approval under 11 U.S.C. § 327 to employ the law firm of Caddell & Conwell of Houston, Texas ("Caddell") as special counsel for the purposes, and under the conditions, described in the Trustee's Application for Entry of an Order Authorizing Trustee to Enter Into Agreement with Edwin E. Wells, Jr., and Authorizing, Pursuant to Section 327(c) of the Bankruptcy Code, the Retention and Employment Of Caddell & Conwell as Special Counsel, filed November 17, 1994, as amended on January 27, 1995, and further amended on February 3, 1995 (the "Application").

■ At the outset, the distinction between a motion and an application is noted. A request for an order generally requires a motion, see Fed.R.Bankr.P. 9013, which in turn requires notice and a hearing, see Fed. R.Bankr.P. 9014; see also 11 U.S.C. § 102(1); e.g. 11 U.S.C. § 330. In contrast, a request

for an order approving a trustee's employment of an attorney pursuant to 11 U.S.C. § 327 is made by filing an application with a copy transmitted to the United States Trustee. See F.R.Bankr.P. 2014(a). Accordingly, the Trustee here was not required to serve notice on any party of his request for court approval of his employment of Caddell, and a hearing was not required under the bankruptcy code or rules. Notwithstanding these procedures, the Trustee gratuitously disseminated his Application to the parties appearing in this matter; and due to the magnitude and complexity of the issues raised by the Application, I have permitted those parties to present their views and offer evidence during a three-day hearing.

The scope of Caddell's proposed employment was not sufficiently defined in the Application. Paragraph 8 suggests that Caddell's employment is sought in connection with "non-bankruptcy causes of action brought on behalf of the Estate ... and ... certain adversary proceedings brought pursuant to 11 U.S.C. §§ 547 and 548." As to the non-bankruptcy causes of action, I note that Paragraph 4 recites that the Trustee has commenced a legal action "seeking recovery on various causes of actions [sic] for acts and omissions generally relating to AroChem during the period from 1988 through 1992." It is evident that the action referred to is the civil action styled *Richard M. Coan, Trustee v. Chase Manhattan Bank, N.A., et al.* (Civil Action H 94–3930), pending in the United States District Court for the Southern District of Texas (the "Trustee's Texas Action"). I have previously approved Caddell's employment for the limited purpose of commencing the Trustee's Texas Action to preserve any rights he may have against the possibility that an applicable statute of limitation might bar their prosecution. At an April 27, 1995 hearing, the Trustee stated that the Application also contemplated Caddell's representation of the estates in connection with six additional civil actions identified on the record at that hearing (the "Miscellaneous Actions").[1] I will consider approval of the Ap-

---

1. The Miscellaneous Actions are the following:
 1. Richard M. Coan, Trustee v. Tri–East Marketing, Ltd. (Adv. Pro. No. 94–5293).

2. Richard M. Coan, Trustee v. USA Petroleum (Bermuda) Ltd. (Adv. Pro. No. 94–5214).

plication only for the purposes of Caddell's representation in the Trustee's Texas Action and the Miscellaneous Actions.

The Application also requests approval of the Trustee's agreement with Edwin E. Wells and certain of his corporate affiliates (the "Affiliates"), who are also clients of Caddell, for the pooling of certain claims and sharing of any net recoveries (the "Pooling Agreement"). Wells is a creditor of these bankruptcy estates, and a shareholder and former director of one or both of the Debtors. He and his Affiliates are prosecuting certain causes of action against various defendants (including all but one of the defendants in the Trustee's Texas Action) in connection with the corporate governance, operation, and decline of the Debtors' businesses. Those actions, which are presently pending in separate civil actions in the United States District Courts for the District of Connecticut and the Southern District of Texas (the "Wells Actions"), consist of both derivative and individual claims. The Pooling Agreement attempts, *inter alia*, to create a common fund from any net recoveries, to be shared equally by Wells and the Trustee after deduction of certain expenses of recovery, including counsel fees to Caddell.

The Trustee argues that unless he is given permission to employ Caddell, he will not be able to prosecute the Trustee's Texas Action, which he estimates could have a value of $100–200 million. The Trustee estimates costs, excluding counsel fees, in the range of $1–2 million. Due to a dearth of liquid estate assets, the Trustee is limited to employing special counsel willing to advance costs and provide services on a contingency fee basis. The Trustee has testified, and Paragraph 11 of the Application provides, that he has "after due diligence, found no other qualified firm willing to undertake representation of the Estate on terms even remotely as favorable to the Estate." Plainly, the Trustee believes that Caddell is willing to undertake the prosecution of the Trustee's Texas Action on a contingency fee basis because of its pre-existing representation of Wells against identical defendants on similar claims which arise from a largely common pattern of facts.

The Application is supported by the United States Department of the Treasury, Internal Revenue Service, which holds a substantial unsecured priority claim, and by several general unsecured creditors. The Government Development Bank of Puerto Rico reported during the hearing that it was withdrawing its objection to the Application. The Office of the United States Trustee has filed an objection to the Application. Several of the principal defendants in the Trustee's Texas Action also oppose the Application, *e.g.*, Chase Manhattan Bank, N.A., Banque Indosuez, Swiss Bank Corporation, Bank Brussels Lambert, and the Victory Group (consisting of Victory Oil Company, Victory Holding Company, Crail Fund, *et al.*), (collectively, the "Bank Group") who are also creditors of these bankruptcy estates.

The Bank Group's objection challenges the propriety of Caddell's proposed dual representation of Wells and the Trustee. The Bank Group argues that Wells' status as a creditor, shareholder, and former director will infect Caddell's representation of the Trustee with an interest adverse to the bankruptcy estates and create actual conflicts of interest with respect to the matters on which Caddell is to be employed.

■ The issue addressed by this ruling is whether Caddell is employable under § 327. If Caddell fails to qualify because he holds or represents an interest adverse to these estates, I will discern whether the Pooling Agreement eliminates that conflict. This ruling does not address the legal sufficiency of the Pooling Agreement; but since, for the reasons that follow, I have determined that Caddell is employable under § 327 standards, I will consider that issue if the Trustee continues to seek approval of the Pooling

---

3. Richard M. Coan, Trustee v. Whitman, Breed, Abbott & Morgan (Adv. Pro. No. 94–5217).

4. Richard M. Coan, Trustee v. Chase Manhattan Bank, et al. (Adv. Pro. No. 94–5310).

5. Richard M. Coan, Trustee v. Chase Manhattan Bank (Adv. Pro. No. 94–5210).

6. Wells, et al. v. Harris, et al., Civil Action No. B 89–482 (WWE).

Agreement, but only after appropriate notice to all parties in interest.[2]

## DISCUSSION

Bankruptcy Code Section 327 provides, in pertinent part, as follows:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an *interest adverse to the estate,* and that are *disinterested* persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

\* \* \* \* \* \*

(c) In a case under chapter 7 ... a person is not disqualified for employment under this section *solely because of such person's employment by or representation of a creditor,* unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an *actual conflict of interest.*

\* \* \* \* \* \*

(e) The trustee, with the court's approval, may employ, *for a specified special purpose,* other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not *represent or hold any interest adverse* to the debtor or to the estate *with respect to the matter on which such attorney is to be employed.*

11 U.S.C. § 327(a), (c), (e) (emphasis supplied).

The bankruptcy goal of providing creditors with as great a distribution as possible requires that a trustee be given expansive powers to collect property for distribution to creditors. *See, e.g.,* 11 U.S.C. §§ 704(1), 544–549. Section 327, which authorizes the trustee's employment of professionals, is among the code sections that assist a trustee in that endeavor. That authority is conditioned, however, upon court approval. Unlike clients outside of the bankruptcy process, who generally have the right to employ attorneys of their choice, a bankruptcy trustee is limited by the code to a defined pool of professionals. Clearly that restriction is intended to further the goal of maximizing the estate. Public policy considerations require court supervision to assure that the services of a professional person employed to seek and collect property for the estate will not be compromised by divided loyalty.

■■■ In analyzing the proposed employment of Caddell, who represents Wells, for a specified special purpose, I note that there is no specific code provision for the employment of special counsel who also represents a creditor. The only subsection of § 327 that specifically addresses the employment of an attorney who represents a creditor is (c), and the only subsection that specifically addresses the employment of special counsel is (e). Nonetheless, I conclude, as did the appellate panel in *In re Fondiller,* 15 B.R. 890 (9th Cir. BAP 1981), *appeal dismissed,* 707 F.2d 441 (9th Cir.1983), that the omission of authority in subsection (e) to employ an attorney who represents a creditor [3] was not intended. As that court observed:

The employment of trustee's special counsel who represents, or has represented, creditors is not covered by the Bankruptcy Reform Act. By contrast, § 327(e) of the Code specifically provides that, under certain circumstances, the attorney for the debtor may serve as special counsel for the trustee. It does not require as a condition of such employment that the attorney cease representing the debtor in the case. Less adversity of interest would normally be involved when the person sought to be appointed special counsel represents a creditor than when he or she represents

---

2. I view the Trustee's participation in the Pooling Agreement to be tantamount to a sale of estate property out of the ordinary course of business. As such, "notice and a hearing" is required, 11 U.S.C. § 363(b); and such relief should be pursued by "notice", not by application. *See* Fed. R.Bank.P. 6004.

3. Indeed, since the purpose of subsection (e) is to permit the trustee to employ a debtor or creditor's attorney for a specified special purpose in order to maximize the estate, there is no principled reason why such "safe harbor" should not extend to an attorney who represents other case-related entities, *e.g.,* a shareholder or director.

the debtor. There is no reason why Congress should intend a more restrictive provision to apply to a creditor's attorney, keeping in mind that the primary reason for such restrictions is the avoidance of conflicts of interest. We therefore conclude that the omission to provide for the employment of trustee's special counsel, who also represents creditors in the case, was an oversight. That omission does not indicate an intention to impose the same restrictions on special counsel to the trustee as on general counsel.

*Id.*, at 892.[4] Accordingly, I read § 327 so that subsection (a) is applied for general retention and subsection (e) is applied when a trustee proposes the special employment of an attorney. *Id.; accord In re Maynard,* 172 B.R. 353 (Bankr.M.D.Fla.1994); *In re Renninger Mason Contractors, Inc.,* 58 B.R. 516 (Bankr.E.D.Pa.1986); *In re Sally Shops, Inc.,* 50 B.R. 264 (Bankr.E.D.Pa.1985); *In re National Trade Corp.,* 28 B.R. 872 (Bankr. N.D.Ill.1983); *see also Stoumbos v. Kilimnik,* 988 F.2d 949, 964 (9th Cir.1993).[5]

Consequently, § 327(e) authorizes the special employment of an attorney who represents a creditor, so long as the proposed attorney "does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed". *Fondiller, supra; see In re Martin–Trigona,* 760 F.2d 1334, 1344 (2d Cir.1985). This construction of subsection (e) is bolstered by an examination of other provisions of the code. For example, the fee forfeiture provision of § 328(c) is only applicable if there is an interest adverse to the estate "with respect to the matter on which such professional is employed." There is no apparent reason why the standard applicable under § 328(c) should not be identical to that under § 327(e). Further, the use in subsection (a) of the plural form of the noun "duty" in its description of the nature of employment contemplated by its terms, *i.e.* "to represent or assist the trustee in carrying out the trustee's *duties* under this title," indicates that subsection (a) is directed to general, not special, employment.

The Bank Group has neither argued nor presented any evidence to support a conclusion that Caddell *holds* any interest which is adverse to these estates. The only interest alleged to be disqualifying is an interest which Caddell *represents,* namely the interests of Wells, a creditor of the estates and a shareholder and former director of the Debtors. Thus, the issue here is whether the alleged Wells interests are adverse to these estates with respect to the specified special matters for which Caddell is to be employed.

"[I]nterest adverse to the estate" is not defined by the bankruptcy code or rules. It has been held that interest adverse to the estate means "(1) ... any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) ... a predisposition under circumstances that render such a bias against the estate." *Matter of CF Holding Corp.,* 164 B.R. 799, 806 (Bankr. D.Conn.1994) (citing *In re Tinley Plaza Assocs., L.P.,* 142 B.R. 272, 277 (Bankr.N.D.Ill.

---

4. The quoted language from *Fondiller* continued with the following:

> Accordingly, the provision of § 327 that an attorney "may not, while employed by the trustee, represent, in connection with the case, a creditor" does not apply to the present dispute wherein the attorneys represent the trustee in a special limited capacity that presents no conflict of interests between the trustee and the creditor clients of attorneys.

*Fondiller* was written before the 1984 amendment to § 327(c). Former § 327(c) was read by some to operate as a complete bar to dual trustee/creditor representation. The 1984 amendment provided a degree of flexibility to that subsection, by eliminating the *per se* prohibition on the employment of an attorney who represents a creditor. That amendment does not diminish the efficacy of *Fondiller's* statutory construction of § 327(e). Indeed, courts have continued to cite *Fondiller* with favor after the 1984 amendments. *See, e.g., In re Maynard, infra.*

5. Code section 327(c) is not necessary for this analysis because under subsection (a) there must be an actual material, as distinguished from merely possible, conflict. Therefore, an analysis to determine under subsection (c) whether there is an actual conflict of interest would be redundant. *See also* discussion at p. 700, *infra.* Subsection (c) was added by the 1984 amendments to eliminate the inflexible prohibition of its predecessor against the employment by a trustee of an attorney who represents a creditor.

1992)); *TWI Int'l, Inc. v. Vanguard Oil and Serv. Co.*, 162 B.R. 672, 675 (S.D.N.Y.1994). An alternative formulation states that an adverse interest exists "when two or more entities possess or assert mutually exclusive claims to the same economic interest." *In re Black Hills Greyhound Racing Ass'n*, 154 B.R. 285, 292 (Bankr.D.S.D.1993).

■ The concept of a conflict of interest is embraced in the adverse interest standard. Adopting that concept, I conclude that the disqualifying adverse interest addressed in § 327(e) is either an *actual* or a *reasonably probable* conflict of interest. Potential conflicts range from mere possibilities to reasonably anticipated probabilities. If it is determined that the latter end of that continuum is implicated, a court need not wait until the inevitable result actually occurs to disqualify counsel. If, however, the conflict is merely theoretical, and its occurrence is merely speculative, disqualification *ex ante* is not necessary. *See In re Stamford Color Photo, Inc.*, 98 B.R. 135, 138 (Bankr.D.Conn.1989) ("[M]erely hypothesizing that conflicts may arise is not a sufficient basis to warrant the disqualification of [an attorney]...."). The Code contains safeguards to protect estates if potential conflicts ripen into actual occurrences. *E.g.* § 328(c).[6] So, while courts, including this court, have drawn a distinction between actual and potential conflicts of interest, the question of adverse interest ultimately turns on whether the particular facts at issue within the scope of the proposed employment call into question the incentive of counsel to act with undivided loyalty to the estate. "Counsel should be disqualified when a conflict casts some doubt as to the vigor with which he or she will represent the client's interest or when the attorney is in a position to use privileged information gained through prior representation of a party opponent." *Id.* at 137.

Rather than worry about the potential/actual dichotomy it is more productive to ask whether a professional has "either a meaningful incentive to act contrary to the best interests of the estate ...—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one." *In re Martin*, 817 F.2d [175,] 180–81 [(1st Cir.1987)]. In other words, if it is plausible that the representation of another interest may cause the [trustee]'s attorneys to act differently than they would without that other representation, then they have a conflict and an interest adverse to the estate. *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 533 (Bankr.S.D.N.Y.1994).

As noted, subsection (e) should be referenced when a trustee applies for court approval of an attorney for a "specified special purpose." In contrast, subsection (a) appears to relate to the general employment of an attorney "to represent or assist the trustee in carrying out the trustee's duties under this title." For the reasons that follow, I conclude that Caddell is employable under subsection (e), but that result would not change in this case even if that subsection were not controlling. First, it is observed that the disinterested person test under subsection (a) would not eliminate Caddell because Caddell is not within any of the defining parts of § 101(14), *e.g.*, is not a creditor and does not "have an interest materially adverse to the interest of the estate or any class of creditors ..." 11 U.S.C. § 101(14)(A), (E), *see also In re BH & P, Inc.*, 103 B.R. 556, 562 (Bankr.D.N.J.1989), *aff'd*, 119 B.R. 35 (D.N.J.1990), *aff'd*, 949 F.2d 1300 (3d Cir.1991) (holding that to "have" a materially adverse interest means to possess it in a personal, not representational, capacity). Further, as will be noted, the adverse interest test of subsection (a) does not disqualify Caddell because no such disqualifying interest has been demonstrated.

■ Against the foregoing legal backdrop, I have examined the three questions which I identified at the commencement of the presentation of evidence on the Application: (1) are there any claims by Wells against these

---

6. Section 328(c) provides the Court with power to deny compensation to an attorney previously approved for employment by a trustee if, *inter alia*, a conflict of interest arose during the tenure of such attorney, and such attorney failed to appropriately address that circumstance at the time. Section 328(c) therefore serves a "self-cleansing" function by providing strong incentive for counsel to consider and swiftly address any potential conflicts which ripen to actual.

estates, (2) are there any claims by the Trustee against Wells, and (3) in the course of suing the Bank Group and others, is there any danger that Caddell might weaken any claims the Trustee has against Wells? In addition, there is a fourth relevant inquiry which was addressed during the hearing on the Application, namely, whether there is any inherent rivalry between the Trustee and Wells in their prosecution of common defendants that would disqualify Caddell from jointly prosecuting the subject actions. Having heard the testimony of witnesses and assessed their credibility, and having considered the exhibits received in evidence, I conclude that there has not been any persuasive evidence that Caddell has any actual or reasonably probable conflict of interest with respect to the matter on which he is to be employed. Indeed, as noted, there has been no such evidence of any adverse interest to the estates even if subsection (e) is not the controlling provision. For example:

## 1. Wells' Claims Against the Estates.

The Bank Group argues that Wells has, and may in the future assert, various claims against the Debtors and these estates which disqualifies Caddell from employment by the Trustee.

### a. Proofs of Claim.

Wells has filed three proofs of claim: (1) a $950,000+ claim arising from the alleged breach of a Stockholder Agreement providing for exclusive financial advisory services, (2) a contract claim in an unspecified sum for alleged exclusive investment banking services, and (3) a claim of unspecified amount for reimbursement of litigation costs in connection with derivative actions against Harris and others. It is asserted that the mere pendency of these claims constitutes a potential conflict of interest, and if the Trustee eventually objects to any of them, an actual conflict will bar Caddell.

 Parenthetically, I note that any contest arising out of those proofs of claim is outside the scope of the Caddell's specified special employment. Moreover, the mere pendency of a proof of claim does not represent an interest adverse to a bankruptcy estate since it does not "... tend to lessen the *value of the bankruptcy estate* ..." or "... create either an actual or potential dispute in which the *estate is a rival claimant* ..." *Matter of CF Holding Corp., supra* (emphasis supplied). But more to the point, Caddell testified that if the Trustee ever objects to Wells' proofs of claim, he would decline to represent Wells in that contested matter. Further, Wells testified that to ameliorate any conflict regarding Caddell's proposed employment, he would withdraw one of these claims with prejudice, and either withdraw the others with prejudice or transfer them to a third party for value, so that he would not have any interest in their prosecution.

Although, as stated, no adverse interest is presented within the scope of Caddell's proposed special employment, I am satisfied that any potential conflict is eliminated by Wells' promised withdrawal/divestiture of his claims and/or Caddell's self-imposed bar to future representation of Wells in claims objection matters.

### b. Shareholder Derivative Claims.

 In his Connecticut District Court Action (Civil Action B 89–482 (WWE)) Wells, as plaintiff, has named the Debtors as defendants in connection with various asserted causes of action. These causes of action, to the extent they do not duplicate Wells' proofs of claim, appear to be shareholder derivative actions. The Bank Group raises the technical objection that because Wells is proceeding against the AroChem Debtors as nominal defendants in these derivative actions, he possesses an interest adverse to the Debtors' estates which is imputed to his counsel.

The short answer is that on April 27, 1995, Wells filed a Motion to Dismiss Claims against Defendants AroChem International, Inc. and AroChem Corporation in his Connecticut District Court Action. That Motion seeks to dismiss "all claims asserted ... against AroChem ..."

I note that the prosecution of nominal defendants in derivative actions generally would not constitute an interest adverse to

the bankruptcy estates of those defendants. Even if it did, I am confident that such interest would fall outside the limited scope of Caddell's proposed employment. Finally, I am satisfied that the proposed dismissal of the AroChem parties will remedy any otherwise disqualifying interest which may have existed for Caddell absent such dismissal.

### c. "Bid-rigging" Claim.

 The Bank Group argues that Count 26 of Wells' Texas District Court Action is an example of Caddell representing a Wells interest that is adverse to these estates. That Count broadly alleges bid-rigging activity between various parties participating in the Trustee's auction of AroChem's Puerto Rican refinery assets. Despite the fact that neither the Trustee nor the estates are named as defendants in that count, or for that matter in any of the counts of that action, the Bank Group believes that the estates are potentially implicated.

Initially, I question whether any claim arising from alleged bid-rigging at the Trustee's auction would constitute a claim against the *estates* as distinguished from a claim against the *trustee* personally for fiduciary defalcation, etc. Subsection 327(e), like subsection (a), is limited to interests adverse to the estate. Moreover, in an attempt to remedy any potential conflict which might be present, Wells testified that he was prepared to dismiss Count 26 with prejudice.

Once again, I conclude that there is no persuasive evidence of an adverse interest within the scope, or even beyond the scope, of the proposed special employment.

### 2. Trustee's Claims Against Wells.

 The Bank Group also argues that the Trustee has valid causes of action against Wells for breach of fiduciary duties as a director of the Debtors during a period when he was allegedly attempting to gain control of AroChem. Evidence in support of that argument included testimony by Wells regarding negotiations he had with the Government Development Bank of Puerto Rico during which he directly or indirectly disclosed information discussed at a board of directors meeting. The Trustee, on the other hand,

has questioned that claim on the basis that Wells was a "whistle blower" trying to save the company from Harris and the Victory Group.

The Trustee testified that he reached the conclusion that the estates were best served by working with Wells against the Bank Group and others after exploring, as best he could, the complex, extensive, and sometimes obscure web of claims and counterclaims surrounding the collapse of the AroChem financial interests. The Trustee's Texas Action has 27 counts, and if successful, it is estimated that there will be a recovery of $100–200 million. He also testified that he had to either join Wells or litigate against him since he is convinced that he cannot successfully prosecute the Trustee's Texas Action without Wells' full cooperation. Finally, in what he describes as an abundance of caution, the Trustee entered into a Tolling Agreement to preserve any claims he may have against Wells. Caddell also testified that he would not represent Wells in a defense of any Trustee claims after the expiration of the Tolling Agreement.

### 3. Caddell Interference with Trustee's claims Against Wells.

 Even if there are no disqualifying conflicts between Wells and Caddell, the parties appearing in this matter were directed to consider whether in the course of suing the banks there is a danger that Caddell might weaken the Trustee's potential claims against Wells. That issue, which was identified at the beginning of this hearing, has lost most of its vitality in view of the conclusion that the only relevant conflicts in a subsection (e) analysis, or for that matter in a subsection (a) context, are those that are actual or at least reasonably probable. As noted, there is no persuasive evidence of any actual adverse interest, but Caddell's development of facts, and/or the Trustee's sharing of confidences with Caddell, in connection with the Wells and Trustee's Texas Actions might arguably undermine the Trustee's future assertion of claims against Wells.

First, it is observed that the Bank Group did not call any witnesses other than Wells

and the Trustee to offer any testimony of any potential claim by the Trustee against Wells that might arise out of the Trustee's Texas Action. Further, neither that testimony nor any other evidence persuades me that there is any reasonable probability of any such danger. That conclusion is buttressed by the risk Attorney Caddell acknowledged if such a conflict were to develop. Attorney Caddell testified that before he agreed to represent the Trustee on a contingency fee basis in the Texas Action, where he was expected to advance all costs—estimated in the $1–2 million range—he explored potential conflicts of interest with the Trustee and Wells. He recognized that if his employment were to be approved by this court and it later developed that there was a conflict that could have been anticipated at the time of his employment, there was a risk that his right to recover reasonable costs of litigation might be successfully challenged. See § 328(a) and (c). That safeguard, which permits applications under § 327 to be filed without notice to any entity other than the United States Trustee, not only encourages a critical review of the attorney-client relationship by the parties who are in a position to identify conflicts, but also protects the estate in the event that a reasonably anticipated conflict is exposed after an appointment under § 327. There is nothing at this time but raw speculation to support a claim that a conflict might develop. Moreover, Attorney Caddell has testified that if a conflict develops, he will not continue to represent Wells. He also stated that if Wells and the Trustee cannot agree on how to prosecute the Wells and Trustee actions, and he cannot resolve their disagreement, Caddell would withdraw as attorney for one or both. Accordingly, I conclude that Caddell is not disqualified under this area of inquiry.

### 4. Competition Between Wells and the Trustee for Recoveries.

 A determination that Caddell is not disqualified under those three areas, is not dispositive if Wells and the Trustee may be potential rivals in their pursuit of common defendants. If, for example, the prosecution of Wells' claim would undermine the vitality of the Trustee's claim against a common defendant, arguably Caddell's loyalty would be divided.

The Trustee testified that there was a theoretical possibility that if his and Wells' Texas Actions were pursued by Caddell on a consolidated basis, the development of facts at trial might favor judgments for Wells at the expense of the Trustee's actions. However, the Trustee knew of no present conflict of this nature, and in fact felt that his and Wells' claims against common defendants were in no way mutually exclusive. Even if there were mutually exclusive claims or similar rivalry, the Trustee testified that the Pooling Agreement would provide a cure by rendering irrelevant the identity of the plaintiff (Wells or the Trustee) obtaining a given judgment.

I am persuaded by the Trustee's testimony. It is apparent that with respect to the Trustee's Texas Action, there is an identity, rather than a conflict, of interest. Caddell has an incentive to vigorously pursue the Wells and the Trustee claims against their common adversaries. By contrast, the Bank Group, whose members are included in those adversary ranks, has an interest in thwarting that action.

In the final analysis, as I have observed repeatedly in this ruling, the overarching purpose served by § 327 is the maximization of the bankruptcy estate. In light of that goal, I cannot overlook the patent interest of the Bank Group in *minimizing* the estate by defeating the Trustee's Texas Action. While I understand the Bank Group's legitimate motivation in that regard, I am constrained to note that their efforts run at cross-purposes with those of §§ 704 and 327.

### ORDER

For the foregoing reasons it is determined that Caddell & Conwell is employable under 11 U.S.C. § 327 subject to the further order of this court on the approval of the Pooling Agreement. Accordingly,

IT IS ORDERED that the Trustee's Application to employ Caddell & Conwell is approved to represent these estates in connection with the Trustee's Texas Action and

the Miscellaneous Actions, as defined herein, and it is

FURTHER ORDERED that the clerk of this court shall serve notice on all parties in interest of a hearing scheduled for May 19, 1995 at 2:00 p.m. to consider the Trustee's request for permission to enter into the Pooling Agreement.