In re Nance HUTTER, Debtor.

Richard COAN, Trustee, Plaintiff,

v.

Gerhard P. HUTTER, Defendant.

Bankruptcy No. 94–52227.
Adversary No. 96–5049.

United States Bankruptcy Court,
D. Connecticut.

Dec. 12, 1997.

Timothy D. Miltenberger, Coan, Lewendon, Royston, Deming & Gulliver, New Haven, CT, for plaintiff.

Gerhard Hutter, Greenwich, CT, pro se.

Nance Hutter, Greenwich, CT, pro se.

## MEMORANDUM AND ORDER ON TRUSTEE'S APPLICATION FOR *NUNC PRO TUNC* EMPLOYMENT OF COUNSEL UNDER § 327; AND DEBTOR AND DEFENDANT'S OBJECTION AND MOTION TO STRIKE

ALAN H. SHIFF, Chief Judge.

The trustee filed the instant application under § 327(a) for court approval of his employment of his law firm to represent him in this adversary proceeding, *nunc pro tunc*.[1]

For the reasons that follow, the trustee's application is approved.

## BACKGROUND

On December 12, 1994, the debtor commenced a chapter 13 case, which was converted to chapter 7 on August 30, 1995. The trustee was appointed on September 1, 1995. On May 3, 1996, he commenced this adversary proceeding under § 363(h) to sell the defendant's interest in a residence at 993 Lake Avenue, Greenwich, Connecticut .(the "Property") which he co-owns with the debtor.

On April 30, 1997, an order entered in this adversary proceeding, granting the trustee's motion for judgment as a sanction against the defendant.[2] It was further ordered that the trustee could sell the defendant's co-ownership interest in the Property under § 363(h); the defendant pay the clerk of court $2,500.00 as a sanction under Rule 7037 F.R.Bankr.P; the debtor's objection to Putnam Trust Company's claim was overruled; the debtor's motion for the appointment of a *pro bono* attorney was denied; the debtor's application for a continuance was denied; and the debtor pay the clerk of court $2,500.00 as a sanction under Rule 9011(a) F.R.Bankr.P. The trustee's applications for attorney's fees and costs, as sanctions under Rules 7037 and 9011(a) F.R.Bankr.P., were denied without prejudice because the record did not disclose an order approving the retention of the trustee's attorney. On May 9, the debtor and the defendant filed motions for reconsideration and notices of appeal of the April 30 order. *See* Rule 8002(b), F.R.Bankr.P.[3] *See Coan v. Hutter (In re Hutter)*, 207 B.R. 981 (Bankr.D.Conn.1997),

---

1. It is noted that several issues in the underlying bankruptcy case and this adversary proceeding are now the subject of pending appeals. Because a timely filed notice of appeal divests this court of jurisdiction to proceed with respect to matters raised by the appeal, *In re Overmyer*, 136 B.R. 374, 375 (Bankr.S.D.N.Y.1992), it is necessary to ascertain whether the issues presented here are the subject of those appeals. The chronology provided herein, *see infra*, text at 310–312, and notes 2–6 and 9, demonstrates that they are not and that this court therefore has jurisdiction to consider them.

2. The background and facts as they pertain to both the case and the adversary proceeding are set out in greater detail in *Coan v. Hutter (In re Hutter)*, 207 B.R. 981 (Bankr.D.Conn.1997), *appeal pending;* and are briefly summarized here.

3. In a bench ruling, later memorialized in an August 6 order, the court denied the debtor and the defendant's May 9 motions for reconsideration.

*appeal pending*, No. 3:97CV1049 (DJS) (D.Conn. May 9, 1997), No. 3:97CV1050(DJS) (D.Conn. May 9, 1997).[4]

On May 8, 1997, the trustee filed the instant application to employ his law firm, Coan, Lewendon, Royston, Deming & Gulliver ("Coan Lewendon"), *nunc pro tunc*, effective May 1, 1996 to "litigate an adversary proceeding to sell the [P]roperty free and clear of the interest of the non–debtor co–owner of the [P]roperty and to represent the trustee when other legal matters arise in the case in connection with said sale." [5] *Application to Employ Attorney for the Trustee*, ¶ 3. On May 12, the debtor and the defendant filed a joint objection [6] and moved to strike the trustee's pleadings. On May 28, 1997, the trustee filed a response to the objection together with a supplemental disclosure statement pursuant to Rule 2014 F.R.Bankr.P.[7] which disclosed the existence of an agreement between the trustee and

Household Realty Corporation, second mortgagee on the Property ("Household"). A copy of a May 2, 1996 letter from the trustee to Household's attorney was attached ("Agreement").[8] The trustee's response noted that the Agreement had been disclosed on the witness and exhibit list he filed in accordance with the June 25, 1996 pretrial order in this adversary proceeding. The trustee's application for retention of Coan Lewendon and his supplemental disclosure statement are hereafter referred to collectively as the "Application." On July 15, 1997, the United States Trustee filed a statement in support of the Application.

On June 24, 1997, the trustee filed a second application to employ Coan Lewendon, so that he could perform his statutory duties while the court considered his Application. The second application, which was considered at a June 24 hearing, did not request a *nunc pro tunc* order and was approved by this

4. On August 19, 1997, the debtor and the defendant filed new notices of appeal from the April 30 order in which they "incorporate[d] by reference [ ] all prior notices of appeal and amended notices of appeal." Those appeals have been transferred by the Bankruptcy Appellate Panel to the United States District Court for the District of Connecticut. *Richard Coan v. Gerhard Hutter*, BAP No. 97–50042 (2nd Cir. BAP October 27, 1997); *Richard Coan v. Gerhard Hutter*, BAP No. 97–50043 (2nd Cir. BAP October 27, 1997).

5. On June 6, 1997, the court held a hearing to consider various matters in this adversary proceeding and the underlying bankruptcy case, including, the instant trustee's May 8, 1997 application to appoint his law firm as the attorney for the trustee *nunc pro tunc* from May 1, 1996; the debtor and the defendant's objections to that application, motions to strike pleadings filed by or on behalf of the trustee, and motions to remove the trustee; and the debtor's motion for sanctions against the trustee. At the hearing, the court denied the motions to remove the trustee and the motion for sanctions in a bench ruling, *see* July 14 orders memorializing those rulings, and reserved decision on the *nunc pro tunc* application and the motion to strike. It is noted that additional orders entered on July 14 pertaining to other matters. *See infra*, note 9.

6. Despite numerous court appearances and hearings, *see In re Hutter, id.*, and their familiarity with the record of this case and adversary proceeding, the Hutters did not object to the trustee's employment of his law firm until May 12,

1997, over one year after the trustee commenced this adversary proceeding and twelve days after the order entered granting the trustee's motion for judgment.

7. Rule 2014 F.R.Bankr.P. provides:

An order approving the employment of attorneys … shall be made only on application of the trustee or committee.… showing … the name of the person to be employed … the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.…

8. The Agreement confirmed that Household would "carve out" $75,000.00 from any amount that would be distributed to it on account of its second mortgage for the payment of administrative expenses and unsecured claims whether Household purchased the Property or it was sold to a third party. In addition, Household agreed to "subordinate the unsecured portion of its claim to the claims of all other unsecured creditors." The trustee agreed to "reduce [his] … fee and the auctioneer has agreed to reduce his fee in order to assure that unsecured creditors receive a meaningful dividend." Further, if Household obtained relief from stay and decided that the trustee should not sell the Property, it would pay to the trustee reasonable attorneys'

court's June 25, 1997 order.[9] The effect of that order was to authorize the trustee to employ Coan Lewendon on and after June 25. The Hutters filed separate notices of appeal. The issues on appeal are separate and distinct from the issue addressed here which is limited to whether the trustee may employ Coan Lewendon *nunc pro tunc* from May 1, 1996 to the April 30, 1997 order.

## DISCUSSION

### 1.

### *Debtor's Standing*

■ Standing is limited to parties in interest. *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 388 (2nd Cir.1997) ("To have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant must be an 'aggrieved person,' a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court"), *quoting Kabro Associates v. Colony Hill Associates (In re Colony Hill Associates)*, 111 F.3d 269, 273 (2nd Cir.1997).

■ There is no doubt that the trustee has the authority, indeed the statutory duty to "collect and reduce to money the property of the estate." *See* § 704(1). It is equally clear that the debtor may not interfere with the trustee's duties by claiming that the sale of a co–owner's interest would adversely affect the debtor. *See Coan v. Bernier (In re Bernier)*, 176 B.R. 976, 986 (Bankr.D.Conn. 1995), *appeal dismissed*, No. 3:95CV02488, (TFGD) (D.Conn. January 10, 1996). *See also Nisselson v. Roussopoulos (In re Roussopoulos)*, 198 B.R. 33, 44 n. 9 (Bankr. E.D.N.Y.1996) (". . . an insolvent Chapter 7

fees. Under that scenario the trustee would not be entitled to trustee's fees.

**9.** On June 24, 1997, the court also conducted a hearing on various motions and objections pertaining to the trustee's planned sale of the Property. The correlating July 14 orders are on appeal. The subject of those appeals does not include the matter under consideration here.

**10.** Rule 1.7 of the ABA Model Rules of Professional Conduct provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

debtor lacks standing to challenge a proposed sale of estate property because he lacks a pecuniary interest in such property."). The only rights protected by § 363(h) in the context of this case are those of the defendant co–owner. Accordingly, the debtor has no standing to object to the trustee's attempt to sell the defendant's interest in the Property. But even if she had standing, her claims are the same as the defendant's and fail for the same reasons.

### 2.

### *Rules of Professional Conduct*

■ At the outset, it is noted that the defendant has not claimed that Coan Lewendon has violated any of the Rules of Professional Conduct.[10] Nonetheless challenges which raise the specter of professional misconduct cannot be overlooked even if imprecisely asserted. *See In re Stamford Color Photo, Inc.*, 98 B.R. 135, 136 (Bankr.D.Conn. 1989) ("The district court bears the responsibility for the supervision of the members of its bar. As a general rule we encourage the district courts to strictly enforce the Code of Professional Responsibility."), *quoting Central Milk Producers Cooperative v. Sentry Food Stores, Inc.*, 573 F.2d 988, 993 (8th Cir.1978). "A court must balance the right to freely choose counsel, the need to maintain ethical standards, the interests of justice, evidence of actual impropriety, and its own ability to control its officers and use the remedy of disqualification if called for." *In re Stamford Color Photo, Inc., supra*, 98 B.R. at 137. Arguably, the Model Rules have been superseded by the standards for attorney employment imposed by § 327(a),[11] but

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client;

. . .

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected;

. . . .

**11.** *See* Richard Lieb, *The Section 327(a) "Disinterestedness" Requirement*, 5 Am.Bankr.Inst. L.Rev. 101, 101 (1997).

even if not, a party seeking disqualification of another's counsel bears a "heavy burden of proving facts required for disqualification", *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2nd Cir.1983).

■ The defendant has not met that burden. If the Application is viewed, as it must be, as of the time Coan Lewendon commenced its services in this adversary proceeding, there was no basis at that time (or at any time) for the conclusion that the Agreement cast any doubt as to the vigor with which Coan Lewendon would represent the trustee in his efforts to sell the defendant's co–ownership interest in the Property or pursue any bona fide claims for the benefit of the estate. Indeed the Agreement made it possible for the trustee to pursue the action to sell the Property, and as noted *infra* at 314–315, there was nothing in the Agreement that inhibited the trustee's right to pursue any claims against Household or any other claims.

### 3.

### *Employability of Coan Lewendon under § 327(a)*

Section 327 provides in pertinent part:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

. . .

(d) The court may authorize the trustee to act as attorney ... for the estate if such authorization is in the best interest of the estate.

. . . .

11 U.S.C. § 327 (West 1997).

Section 101(14) provides in part:

"disinterested person" means person that—

. . .

(E) does not have an interest materially adverse to the interest of the estate ... for any ... reason.

■ The trustee bears the burden of demonstrating that the professional he seeks to employ is qualified for the appointment. *See In re 245 Associates, LLC*, 188 B.R. 743, 750 (Bankr.S.D.N.Y.1995); *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 531 (Bankr. S.D.N.Y.1994).

> '[I]nterest adverse to the estate' is not defined by the bankruptcy code or rules. It has been held that interest adverse to the estate means (1) any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant or (2) a predisposition under circumstances that render such a bias against the estate.

*In Re AroChem Corp.*, 181 B.R. 693, 699 (Bankr.D.Conn.1995) (citations and internal quotation marks omitted). Any disqualifying conflict of interest must be either *"actual* or *reasonably probable"* and not "merely theoretical, and its occurrence ... merely speculative." *Id.* at 700 (emphasis in original). *See also In re Stamford Color Photo, Inc., supra*, 98 B.R. at 138. However,

> [r]ather than worry about the potential/actual dichotomy, it is more productive to ask whether a professional has *either a meaningful incentive to act contrary to the best interests of the estate* ... —an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one.... In other words, if it is plausible that the representation of another interest may cause the trustee's attorneys to act differently than they would without that other representation, then they have a conflict and an interest adverse to the estate.

*In re AroChem Corp.*, 181 B.R. at 700. (citations and internal quotation marks omitted) (emphasis added). In determining whether a professional has a "meaningful incentive to act contrary to the best interests of the estate", the inquiry focuses on the particular facts and circumstances of each case. *In re Leslie Fay Companies, Inc., supra*, 175 B.R. at 533. In the context of satisfying the requirements of § 327 where a trustee seeks to

employ his law firm, it has been observed that:

> By expressly authorizing the appointment of the trustee as counsel, section 327(d) rejects the notion that status as trustee would itself create a conflict of interest. Because an individual would have qualified to serve as trustee only if he or she were otherwise disinterested, the selection of trustee as counsel must necessarily satisfy the requirement of disinterestedness.

*In re Rainbow Press of Fredonia*, 197 B.R. 428, 430 (Bankr.W.D.N.Y.1996).

██ Since the trustee is a principal in Coan Lewendon, the Application is read as an application to employ himself. As trustee, he has a statutory duty to the estate. In that role, he may not hire himself as attorney unless there is no conflict of interest between him as attorney and him as trustee.

██ The defendant argues that Coan Lewendon is not disinterested because the defendant has a pending state court counterclaim against Household which the trustee should pursue for the benefit of the estate; the trustee has the Agreement with Household for the payment of the trustee's legal fees, arising out of the sale of the Property; therefore, Coan Lewendon will not pursue the counterclaim or will not pursue it with the requisite vigor. As a consequence, the trustee's Application to employ Coan Lewendon to sell the defendant's interest in the Property under § 363(h) should be denied. The syllogism does not work.

There is no basis in the record to suggest that the counterclaim is viable.[12] Moreover, there is no persuasive evidence or argument that the counterclaim has any merit. The contrary conclusion is justified. The trustee stated at the June 6 hearing,[13] at which the defendant was in attendance, that there was nothing in the Agreement which prevented him from pursuing the counterclaim. He further stated that in an effort to investigate the utility of pursuing the counterclaim, he solicited the defendant's cooperation. *See* tape two of June 6, 1997 hearing, at 1964–1978. His claim that the defendant rejected his effort was not disputed. Having made an effort to investigate the counterclaim only to be thwarted by the defendant, the burden shifts to the defendant to prove the bonefides of the counterclaim on which he rests his conflict of interest argument.

The defendant has not offered a shred of evidence or even made a persuasive argument that his counterclaim has any chance of success. All he has offered is his self-serving statement that his counterclaim has merit. But even if the counterclaim is both viable and arguably meritorious, there is nothing in the Agreement that presents a conflict of interest between the estate and the trustee or Coan Lewendon.

First, as to the propriety of the Agreement: when, as here, a chapter 7 trustee has no source of funds to employ an attorney in pursuit of the statutory duty "to collect and reduce to money the property of the estate", he or she may obtain such funds from a creditor with a security interest in the property, *provided that the funding does not interfere in any way with the trustee's duties.* A debtor may not frustrate a trustee's attempt to obtain funding to sell property under § 363 by the mere filing of a claim against such a secured creditor. That bizarre result cannot be reconciled with the trustee's mandatory duty to sell estate property for distribution to creditors.

The question then is whether there is language in the Agreement which directly or indirectly prevents or creates a disincentive on the part of the trustee or Coan Lewendon to pursue the counterclaim. There is not. The defendant has not identified and the court has not found any such language. Accordingly, Coan Lewendon is employable by the trustee under § 327(a).

---

**12.** The debtor and the defendant filed a March 17, 1992 counterclaim in response to the state court foreclosure action Household filed against them. After the first mortgagee filed a similar foreclosure action against the Hutters, Household did not pursue the action further. There is nothing in the record to suggest that the defendant pursued the state court case involving Household beyond the filing of an answer and the filing of a counterclaim.

**13.** *See supra,* note 5.

## 4.

### *Nunc pro tunc Employment*

Generally, the Second Circuit disfavors *nunc pro tunc* appointments of counsel. *See, e.g., Matter of Futuronics Corp.*, 655 F.2d 463, 469 (2d Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Rainbow Press of Fredonia,* 197 B.R. 428, 429 (Bankr. W.D.N.Y.1996); *In re Piecuil,* 145 B.R. 777 (Bankr.W.D.N.Y.1992). However, this Circuit recognizes that where the failure to timely file an application was due to either "excusable neglect" or "unavoidable hardship", such appointments may be appropriate. *See, e.g., In re 245 Associates, LLC,* 188 B.R. 743, 750–51 (Bankr.S.D.N.Y.1995); *In re Robotics Resources R2, Inc.,* 117 B.R. 61, 61 (Bankr.D.Conn.1990); *In re Keegan Utility Contractors,* 73 B.R. 82, 82 (Bankr. W.D.N.Y.1987). Applicable case law therefore "permits this Court, as a court of equity, latitude to grant relief where the failure to file a timely application has been explained, and the explanation has been found reasonable." *In re Piecuil, supra,* 145 B.R. 777, 783. *See also, In re Drexel Burnham Lambert Group, Inc.,* 112 B.R. 584, 586 n. 1 (Bankr.S.D.N.Y.1990) ("[t]he bankruptcy courts in this district often grant *nunc pro tunc* approval relating back for a short period of time if the failure to secure prior approval was not the fault of the attorney because the attorney first turned to pressing matters in the interest of the estate ...").

The Hutters argue that the trustee's failure to properly retain Coan Lewendon was deliberate and therefore not excusable neglect. In support of that assertion, the Hutters contend that the trustee waited nine months before filing this adversary proceeding and that he deliberately failed to obtain court approval of the Agreement with Household "because it would mean disclosure [of the Agreement], which he cautiously sought to avoid." *June 6, 1997 Joint Memorandum* at 17.

In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 388, 113 S.Ct. 1489, 1494, 123 L.Ed.2d 74 (1993), the United States Supreme Court interpreted "excusable neglect" in the context of late filed proofs of claim as to include "inadvertence, mistake, or carelessness." Although there is a divergence of authority as to whether the *Pioneer* analysis should be extended to *nunc pro tunc* retention applications, this court concludes that *Pioneer*'s definition of excusable neglect should apply here. *See In re 245 Associates, LLC, supra,* 188 B.R. at 751–52 ("On balance ... we conclude that the *Pioneer* standard should apply to *nunc pro tunc* employment applications."); *Matter of Inter Urban Broadcasting of Saint Louis, Inc.,* 174 B.R. 441, 448 (E.D.La.1994) (affirming bankruptcy court's holding that, in light of *Pioneer,* "[t]he determination [whether *nunc pro tunc* appointment is appropriate] is at bottom an equitable one, taking into account all relevant circumstances surrounding the party's omission ... These include the danger of prejudice to the debtor, the length of the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.")

Even without the broader *Pioneer* construction of excusable neglect, the relief sought by the trustee is well within the standard adopted by *In re Robotics Resources R2, Inc., supra,* 117 B.R. at 61 and *In re Piecuil, supra,* 145 B.R. at 783.

The trustee was appointed on September 1, 1995, two days after the debtor's case had been converted to Chapter 7. At that time, the secured creditors had not been paid by the Hutters in over four years and, according to the trustee, he focused his attention on the claims of those creditors. Moreover, after the trustee was appointed, the debtor filed numerous papers *pro se.*[14] Therefore, in addition to addressing the claims of creditors, the trustee argues that he had to dedicate a significant amount of his time evaluating and responding to the papers filed by the debtor.

The record in this case and adversary proceeding supports the trustee's claim. A review of the docket in this case discloses the numerous pleadings and other papers filed

---

**14.** The debtor fired her attorney on May 11, 1995, *see In re Hutter, supra,* 207 B.R. at 983.

by the Hutters, often on the date of a hearing. It is also clear from the record that the trustee has had to take action on many occasions to address delaying tactics of both the debtor and the defendant. *See In re Hutter, supra*, 207 B.R. 981. Contrary to the Hutters' assertion, there is no evidence to suggest that the trustee deliberately withheld his § 327 application to employ an attorney or a Rule 2014 disclosure statement.

The Hutters do not assert what prejudice, if any, the defendant may have suffered as a result of the trustee's failure to file the Application and none can be established from the record. Had the Application been timely filed and had the same objections been raised then as are raised now, it would have been granted. The record warrants the finding that the delay was in large part due to the numerous papers filed and consequential court appearances caused by the Hutters. Accordingly, it is concluded that the trustee offered a reasonable explanation for his failure to timely file the Application. As noted, *supra* at note 6, the Hutters waited for over one year to raise any question as to the employability of Coan Lewendon. It is also significant that the United States trustee, who has the responsibility under 28 U.S.C. § 586(a)(3)(H) to monitor applications for appointment, supports the Application *nunc pro tunc*. Because it is found that the failure was excusable under the circumstances, appointment *nunc pro tunc* from May 1, 1996 to April 30, 1997 is appropriate. In light of that determination, the motion to strike the pleadings of Coan Lewendon is denied.

### ORDER

IT IS ORDERED that the trustee's application to employ Coan Lewendon *nunc pro tunc* is granted;

IT IS FURTHER ORDERED that the Hutters' objection is overruled; and

IT IS FURTHER ORDERED that the Hutters' motion to strike the pleadings of Coan Lewendon is denied.