**In re Nance HUTTER, Debtor.**

**Bankruptcy No. 94–52227.**

United States Bankruptcy Court,
D. Connecticut.

June 3, 1998.

§ 455. The debtor's motion to recuse is denied, and the trustee's motion to reschedule the auction sale is granted.

## BACKGROUND

The factual predicate for these motions is stated in *Richard Coan v. Gerhard P. Hutter (In re Hutter)*, 207 B.R. 981 (Bankr.D.Conn. 1997), *appeal pending*, (the "1997 Sale Order"). This is the second phase of the Hutters' concerted and coordinated effort to block the sale of their residence, located at 993 Lake Avenue, Greenwich, Connecticut (the "Property"). On June 30, 1986 and May 8, 1989, the Hutters granted mortgages to Putnam Trust Company of Greenwich ("Putnam") and Household Realty Corporation ("Household") respectively. The first phase began on June 1, 1992 when Putnam commenced a foreclosure action in the Connecticut Superior Court and ended on November 3, 1994 after their fifth motion to reopen the sale date set by that court was denied, the Connecticut Appellate Court dismissed their appeal and amended appeal, and the Connecticut Supreme Court denied their petition for certification.

The second phase began on December 12, 1994 when the debtor filed a bankruptcy petition in this court. On that date, the Hutters owed Putnam $624,321.79 and Household $656,881.49. Further, they had not paid real estate taxes to Greenwich, Connecticut since 1990.

The 1997 Sale Order, *inter alia*, granted the trustee's motion for judgment under Rule 7037 F.R. Bankr.P., as a sanction against Gerhard Hutter and authorized the sale of the Property, including his co-ownership interest under 11 U.S.C. § 363(h). The trustee's motion followed numerous continuances which were granted over the trustee's objection. On May 9, 1997, the Hutters filed a motion for reconsideration which was denied on June 6. On July 25, 1997, the district court granted a stay of the auction sale pending appeal. On January 14, 1998, the district court vacated that stay. A copy of the January 14 order is attached for ease of reference as Appendix A.

Timothy D. Miltenberger, Coan, Lewendon, Royston, Deming & Gulliver, New Haven, CT, for Trustee.

Nance Hutter, Greenwich,CT, Pro se.

Gerhard P. Hutter, Greenwich, CT, Pro se.

## MEMORANDUM AND ORDER ON TRUSTEE'S MOTION TO RESCHEDULE AUCTION SALE AND DEBTOR'S MOTION TO DISQUALIFY UNDER 28 U.S.C. § 455

ALAN H.W. SHIFF, Chief Judge.

The chapter 7 trustee filed this motion to reschedule the auction sale of a residence jointly occupied by the chapter 7 debtor and Gerhard P. Hutter, her husband. On the date of the hearing, the debtor filed a Motion to Disqualify Judge Pursuant to 28 U.S.C.

On March 11, 1998, the Hutters filed a Notice of Motion for Reimplementation of Stay of Bankruptcy Sale Pending Disposition of Appeal in the Second Circuit Court of Appeals. On March 31, the following order entered:

> By this motion Appellants seek reinstatement, pending full briefing and determination on the merits, of a District Court's recently vacated stay of a Bankruptcy Court's orders (i) imposing default judgment as a discovery sanction in an adversary proceeding seeking to authorize the sale of a non-debtor's one-half interest in his marital residence pursuant to 11 U.S.C. §§ 363(h), and thereafter (ii) authorizing an *auction sale* of that home...
>
> IT IS HEREBY ORDERED THAT the motion is hereby denied ...

(emphasis added). A copy of that order is attached as Appendix B. On April 2, 1998, the trustee filed the instant motion to reschedule the auction sale. At the April 14 hearing, the debtor moved with a supporting affidavit for my recusal from this case pursuant to 28 U.S.C. § 455.

## DISCUSSION

### I.

### Motion for Recusal

Although he did not specifically say so at the April 14 proceeding, Gerhard Hutter obviously supports the debtor's April 14 Motion to Disqualify.[1] The Assistant United States Attorney took no position. The motion was opposed by Putnam, the United States Trustee, and the trustee. The trustee argued that the debtor's motion was merely an attempt to have another judge administer this case after she and her husband failed to block the auction sale in this court and the courts to which they filed appeals.

Title 28 U.S.C. § 455, made applicable by Rule 5004 F.R. Bankr.P., provides in pertinent part:

> (a) Any ... judge ... of the United States shall disqualify himself in any proceeding

---

[1] Gerhard Hutter appeared at the hearing with the debtor and has previously argued on appeal that my decision in the 1997 Sale Order was

in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party ....

28 U.S.C. §§ 455(a), (b)(1) (West 1997).

### *Timeliness*

This circuit has construed § 455 to include a timeliness provision. *United States v. Brinkworth*, 68 F.3d 633, 639 (2d Cir.1995). Applications for recusal

> ... are normally to be made at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.... It is important to present recusal applications promptly for at least two reasons. First, a prompt application affords the ... judge an opportunity to address the merits of the application before taking any further steps that may be inappropriate for the judge to make. *Second, a prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters.*

*In re International Business Machines Corp.*, 45 F.3d 641, 643 (2d Cir.1995) (citations and internal quotation marks omitted) (emphasis added). *See also Gil Enterprises, Inc. v. Delvy*, 79 F.3d 241, 247 (2d Cir.1996). The Second Circuit has applied a four part test in determining whether a § 455 motion is timely:

> (1) the movant has participated in a substantial manner in trial or pretrial proceedings;
>
> (2) granting the motion would represent a waste of judicial resources;
>
> (3) the motion was made after the entry of judgment; and
>
> (4) the movant can demonstrate good cause for delay.

*United States v. Brinkworth, supra*, 68 F.3d at 639. As applied to the facts here, it is

---

tainted by an impermissible animus against her. *See* Appendix A.

determined that the recusal motion was not timely filed.

The debtor identifies June 6, 1995 as the date when she first "began to fear that [she] could not receive a fair and impartial treatment." *Affidavit in Support of Motion for Disqualification* at 3. She also states that on February 4, 1997, she "came to understand the true hopelessness of [her] situation, and [my] absolute unwillingness to give [her] even the slightest attention or consideration, depriving [her] of [her] due process, and equal protection under the law." *Id.* at 8.

### Whether the Movant Participated in a Substantial Manner in Trial or Pre-trial Proceedings

The docket in this bankruptcy case contains 50 pages of entries through April 14, 1998, the hearing date. Forty-two of those pages are after June 6, 1995. The debtor filed 52 pleadings and other papers after February 4, 1997, *i.e.*, 25 motions, 25 objections, and two supplemental objections. Her motions sought, *inter alia*, the appointment of *pro bono* counsel; continuances [2]; a stay pending appeal; sanctions; and various other motions to expedite hearing, quash, abstain, compel, clarify, reconsider, decide matters without oral argument, correct the docket, remove the trustee and strike his pleadings, and dismiss the adversary proceeding. In addition, the trustee initiated six motions after February 4, 1997. As a consequence of the matters filed by the debtor and the trustee, the court conducted 29 hearings.

The 20 page docket of the adversary proceeding *Coan v. Hutter, supra*, 207 B.R. 981, which resulted in the 1997 Sale Order, contains 12 pages following February 4, 1997. Notwithstanding her lack of standing,[3] the debtor joined Gerhard Hutter in filing two pleadings after February 4, 1997. The trustee filed five motions after that date, and the court conducted seven hearings on the matters filed by the debtor and the trustee. The debtor did not move for my recusal in the adversary proceeding or in this case until April 14, 1998. It is therefore apparent that the debtor "participated in a substantial manner" in this case before she moved for my recusal.

### Whether Granting the Motion Would Represent a Waste of Judicial Resources

Granting the debtor's motion would represent a significant waste of judicial resources, as her failure to move for my recusal at the earliest possible moment after "she came to understand the true hopelessness of [her] situation" resulted in a substantial increase in the docket of this case. As a consequence, I have invested innumerable hours and resources in connection with those matters, taking "steps that [would have been] inappropriate," assuming her recusal motion had any merit. *In re International Business Machines Corp., supra*, 45 F.3d 641, 643. Those observations do not consider the time it would take another judge to become familiar with this case, which would result in even more waste of judicial resources and delay. As noted *infra* at 636–642, the debtor's motion has no merit.

### Whether the Motion Was Made After the Entry of Judgment

The 1997 Sale Order, *inter alia*, authorized the trustee to sell Gerhard Hutter's co-ownership in the Property under § 363(h). On January 14, 1998, the district court vacated its July 25, 1997 stay pending appeal of the 1997 Sale Order. On March 31, 1998, the Second Circuit Court of Appeals denied the motion filed by the debtor and Gerhard Hutter to reinstate the stay pending appeal. The debtor's recusal motion was filed on April 14, 1998.

---

**2.** On several occasions, court proceedings were continued due to the debtor's absence. On some occasions, the debtor filed a request for a continuance and did not appear for the hearing. On others, she did not even request a continuance. In addition, she made numerous requests for continuances in open court. After one such request was denied, she suggested the onset of a medical emergency, effectively necessitating the continuance. *See In re Hutter*, 207 B.R. at 992.

Gerhard Hutter's repeated alleged medical emergencies similarly forced several continuances. *See id.* at 984–988.

**3.** In *In re Hutter*, 215 B.R. 308, 312 (Bankr. D.Conn.1997), *appeal pending*, I concluded that the debtor had no standing to object to the trustee's motion to sell her husband's interest in the Property under § 363(h).

*Whether the Movant Can Demonstrate Good Cause for Delay*

■ The debtor appears to acquiesce in the conclusion that her recusal motion was not timely made, because on April 29, 1998, she filed an unsolicited Supplement to Motion to Disqualify, in which she claims that "had [she] known about [my] favoritism [toward the trustee], which goes back at least as far as 1993, she would have immediately moved Judge Shiff to disqualify himself, and for Richard Coan to be replaced with another chapter 7 trustee." *See Supplement to Motion* at ¶ 11. This allegation is discussed *infra* at 637–641. The debtor's attempt to avoid the consequences of her untimely recusal motion is without merit, but even if her motion were timely, it should be denied.

### *Disqualification*

■ In the absence of adequate proof to the contrary, a judge's impartiality is presumed. *In re Cooke,* 160 B.R. 701, 703 (Bankr.D.Conn.1993) *citing Wolfson v. Palmieri,* 396 F.2d 121, 126 (2d Cir.1968). As the Second Circuit observed in *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1312, (2d Cir.1988), *reh'g denied,* 869 F.2d 116 (2d Cir.1989), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989), "[l]itigants are entitled to an unbiased judge; not to a judge of their choosing."

■ Although the debtor does not identify which subsection of § 455 is applicable to her motion, it is determined that the pertinent provisions are § 455(a) and § 455(b)(1).[4] The analysis of those subsections looks principally to extrajudicial conduct as the basis for making such a determination, not conduct which arises in a judicial context. *See Liteky v. United States,* 510 U.S. 540, 551–554, 114 S.Ct. 1147, 1155–1157, 127 L.Ed.2d 474 (1994); *In re Drexel Burnham Lambert, Inc., supra,* 861 F.2d at 1314. The debtor's papers do not suggest any extrajudicial conduct. Nonetheless, challenges to a judge's impartiality, even if imprecise, must be scrutinized with care.

■ Section 455(a) requires recusal whenever there is an objective appearance of bias.

*Pashaian v. Eccelston Properties, Ltd.,* 88 F.3d 77, 83 (2d Cir.1996). *See also United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992) (the court must determine whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal"); *In re Cooke, supra,* 160 B.R. at 705 ("Section 455(a) thus requires recusal where there is the appearance of partiality"). In deciding whether to recuse, "the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *In re Drexel Burnham Lambert, Inc., supra,* 861 F.2d at 1312 (citation omitted).

Similarly, in considering a motion under § 455(b)

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States, supra,* 510 U.S. at 555, 114 S.Ct. at 1157. *See also Verone v. Taconic Telephone Corp.,* 826 F.Supp. 632, 635 (N.D.N.Y.1993) (citations omitted) ("Unfavorable rulings do not in and of themselves indicate a personal bias or prejudice concerning a party such to justify disqualification nor do such rulings create an appearance of impropriety").

The debtor alleges that I have a "personal bias and prejudice which prevents [me] from ruling fairly and impartially in this matter

---

4.  *See* text *supra* at 634.

..." because I hold a "strong personal bias and prejudice" against single spouse bankruptcy filings; hold a "personal bias, prejudice, and a preconceived opinion about reconversions"; have shown favoritism toward the trustee by, *inter alia*, discrediting her "documented and proven" complaints against the trustee; and have conducted hearings without any representation of the debtor's interest. *See Motion to Disqualify. See also April 17, 1998 Statement to Correct the Record* at ¶ 4.

### Single Spouse Bankruptcy Filings

The debtor's assertion that I have a predisposition against single spouse bankruptcy filings is without merit. I have not adopted a *per se* prohibition against one spouse filing a bankruptcy petition without the other. However, I am opposed to the abuse of the bankruptcy process, and any attempt to do so will not be tolerated. *See e.g.* § 105(a) and Rule 9011, F.R. Bankr.P. A suspicion might arise when a husband and wife, who have an interest in property on which they are joint obligors, file *sequential* bankruptcy petitions.[5] The debtor has not cited any ruling which states or suggests I have a "strong personal bias and prejudice" against her because she did not file a joint petition with her husband.

### Reconversions

The debtor claims that I hold a "pre-conceived opinion about reconversions." The debtor correctly notes that the 1997 Sale Order sanctioned her under Rule 9011(a) F.R. Bankr.P. for filing a frivolous motion to reconvert her case to chapter 13. The debtor was sanctioned because § 706(a) precluded her from pursuing reconversion, as her case had been previously converted from chapter 11 to chapter 7. *In re Hutter, supra*, 207 B.R. at 992–994. The debtor's motion to reconvert was found to be frivolous also because the debtor exceeded the eligibility restrictions prescribed by § 109(e), that is, she had too much secured debt. *Id.* Accordingly, there is no basis to conclude that my views toward reconversions are, or were, motivated

by impermissible bias. Rather, they are compelled by the plain language of the bankruptcy code.

The debtor has challenged the sanctions imposed by the 1997 Sale Order by filing an appeal which is pending. Her disagreement with my judicial decisions is appropriately tested by appeal, not by recusal motion. *See Liteky v. United States, supra*, 510 U.S. at 555, 114 S.Ct. at 1157 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion").

### Alleged Favoritism Toward the Trustee

The debtor argues that my alleged favoritism toward the trustee combined with my "unusually close relationship [with him] ... would cause the 'average person on the street' to harbor doubts about [my] impartiality in this case." *Supplement to Motion*, at ¶ 9. As evidence of that favoritism, the debtor contends that trustee Coan was appointed to serve as chapter 7 trustee, and I approved his applications to employ his law firm as attorney for the trustee, "in a disproportionate number of chapter 7 cases with assets" since 1993. *Id.* at ¶ 1. That resulted in a "shocking disparity in compensation" between the amount awarded to him as trustee and to his firm, when compared to the compensation of the other chapter 7 trustees and their law firms. *Id.* at ¶ 4. In support of that claim, utilizing records maintained by the clerk's office, the debtor asserts that

> ... in the period 1993 to the present, [trustee] Coan was awarded approximately $900,000 in chapter 7 trustees fees, and approximately $1,500,000 in legal fees to his law firm. In stark contrast, the total combined compensation awarded to the other eight chapter 7 trustee[s] was approximately $386,000. The fourteen other law firms appointed in this period were awarded a combined total of approximately $352,000. In short, [trustee] Coan and his law firm were awarded approximately $2,400,000 in the same period in which all other chapter 7 trustees and all the other law firms appointed as trustee's attorney

**5.** *See, e.g., In re Yimam*, 214 B.R. 463, 465 (Bankr.D.Md.1997) (finding that husband and wife's "continuous abuse of the bankruptcy process" by filing alternative bankruptcy petitions

for the "purpose of forestalling foreclosure" warranted the issuance of an order under § 105(a) which excluded their residence from the automatic stay on any new petition filed).

were awarded a combined total of approximately $738,000.[6]

*Id.* at ¶ 3.

In addition, the debtor asserts that my alleged bias "caused [me] to discredit [her] documented and proven complaint[s] against the trustee," *Motion to Disqualify* at 3, including, *inter alia,* her objection to the trustee's carve-out agreement with Household and her motion to remove the trustee. *See In re Hutter, supra,* 215 B.R. 308. Finally, the debtor claims that "[e]ach time Richard Coan made a request, it was granted. Each time Mrs. Hutter made a request, it was denied." *Supplement to Motion* at ¶ 8.

It is important to recognize that the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, removed many of the supervisory functions from bankruptcy judges and transferred them to the Office of the United States Trustee. That legislation was designed to "... disengage bankruptcy judges from the administrative phases of bankruptcy practice." *See* 9 Norton Bankr.L. & Prac.2d Pt. X, Ed. Comment (West, 1997). The Attorney General has the authority to appoint one United States Trustee for each of 21 regions. *See* 28 U.S.C. § 581(a). Each United States Trustee is under the general supervision of the Attorney General. *See* 28 U.S.C. § 586(c). One or more assistant United States Trustees may be appointed in a given region by the Attorney General, *see* 28 U.S.C. § 582, or such designation may be made with her approval by the United States Trustee, *see* 28 U.S.C. § 586(b). The Attorney General determines the official stations within the regions for the United States Trustees and their assistants. *See* 28 U.S.C. § 585.

The Office of the United States Trustee in each district, not the court, establishes and supervises a panel of private trustees who are "eligible and available to serve as trustees" under chapter 7, *see* 28 U.S.C. § 586(a)(1). An interim chapter 7 trustee is appointed in each chapter 7 case, *see* 11 U.S.C. § 701(a)(1). In Connecticut, the assistant United States Trustee makes the discretionary determination as to which trustees will serve in each of the three divisions, *i.e.,* Hartford, New Haven, and Bridgeport.

The debtor's bankruptcy case was filed in Bridgeport. As of August 30, 1995, when the case was converted to chapter 7, two chapter 7 trustees were designated to serve in this division. Those trustees are alternately assigned to cases in batches of approximately equal quantities based on the date of the first meeting of creditors in those cases, *see* § 341. To prevent trustee "shopping," those dates are not disclosed to the public. Thus, the selection of interim trustees in this court is done on a blind rotation basis. This procedure is also followed when a case is converted to a chapter 7 case. If a trustee is not elected, *see* § 702(a)-(c), the interim trustee becomes the trustee, *see* § 702(d). After an interim trustee becomes the trustee, he or she determines whether there are assets available for distribution, *see* § 704. It is therefore apparent that under the procedure adopted in Connecticut, chapter 7 asset cases cannot be directed to any particular trustee by the United States Trustee's office, for the simple reason that that office does not know what cases will go to which trustee, even assuming that there is advance notice that a given case has assets for distribution.

As noted, I have no involvement in the trustee appointment process. I do not keep any records of how much compensation trustee Coan or any other trustee is awarded or how his compensation compares with that of other trustees in Bridgeport or elsewhere in the district. I do not keep a record of how often he or any other trustee is authorized to employ their respective law firms to act as attorney for the trustee. Similarly, I do not maintain records relating to the compensation earned by each law firm that represents members of the trustee panel. The clerk of court is charged with the responsibility for keeping such records. *See* Rule 2013 F.R. Bankr.P. The Editor's Comment on that rule states that "[i]t was felt that the retention of [the reporting requirement] was essential to maintain the public integrity of the courts

---

**6.** In calculating these figures, the debtor does not state whether trustee Coan's law firm was employed by him in every case. Indeed, that firm has been employed by at least one other chapter 7 trustee since 1993.

and serves as a good check on the United States Trustee." *Norton Bankruptcy Rules Pamphlet 1997–1998 Edition,* 135 (West, 1997).

Title 28 U.S.C. § 586(a)(3) authorizes the United States Trustee to review and comment on applications filed under 11 U.S.C. § 327(a) by chapter 7 trustees to employ professionals, including their own law firms, and to review applications for compensation filed under § 330 by trustees and their professionals. Code § 326(a) provides for a limitation on the compensation of trustees based on percentages of amounts of money "disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." Subject to § 326(a), § 330 authorizes reasonable compensation to a chapter 7 trustee and a professional person employed under § 327. It is my understanding that the office of the United States Trustee in this district reviews all applications to employ professionals filed under § 327(a). It is further my understanding that the office of the United States Trustee reviews all applications filed under § 330, including those filed by chapter 7 trustees, and files a report with comments on each application together with any objection it considers appropriate.

I am not aware of any instance in which the United States Trustee has not followed this procedure with respect to any application under § 330(a) filed by trustee Coan for compensation to himself in his capacity as trustee, and the debtor's motion has not brought any such instance to my attention. I am not aware of any instance where I entered an order approving compensation for trustee Coan over the objection of the United States Trustee, and the debtor's motion has not brought any such instance to my attention. Finally, I am not aware of any instance where I approved trustee Coan's compensation without the representation by the Office of the United States Trustee that the amount requested had been reviewed and approved.

Similarly, I am not aware of any instance in which the United States Trustee has not reviewed and commented upon trustee Coan's applications under § 327(a) and (d) for approval to employ his law firm, nor am I aware of any instance in which I approved such an application without the approval of the United States Trustee. Further, I am not aware of any instance in which the United States Trustee has not reviewed and commented upon applications under § 330(a) filed by trustee Coan's law firm for compensation, and the debtor's motion has not brought any such instance to my attention. I am not aware of any instance where I entered an order approving compensation for trustee Coan's law firm over the objection of the United States Trustee, and the debtor's motion has not brought any such instance to my attention. Finally, I am not aware of any instance where I approved compensation for trustee Coan's law firm without the representation by the Office of the United States Trustee that the amount requested had been reviewed and approved. Indeed, contrary to the assertion made in the debtor's motion that I awarded such fees in this case over her objection, it is noteworthy that I denied, *sua sponte,* the trustee's application for attorneys fees and expenses in the 1997 Sale Order because his law firm failed to file a retention application under § 327(a), (d). *See In re Hutter, supra,* 207 B.R. at 994.

Significantly, the debtor does not assert that trustee Coan's compensation, or that of his law firm, has been *inappropriate,* only that it has been disproportionately higher than that of other trustees and their firms. I am not aware of any complaints by any of the other trustees or anyone else regarding trustee Coan's frequency of appointment, his compensation, or that of his law firm. But more to the point I am, as noted, completely removed from the process of trustee appointments and the statutory calculation of their trustee compensation. In addition, the statutory insertion of the United States Trustee's duty to supervise, review, and challenge provides an independent safeguard against excessive professional compensation. There is no allegation, and no suspicion, that those safeguards are inadequate or that they have been inadequately employed. To the contrary, it has been my observation that the office of the United States Trustee in this district has performed its duties very well.

**640**

Even if it could be established that I have some level of relationship with trustee Coan, it is well settled that " 'a judge's mere acquaintance with a party or witness is not sufficient to call into question that judge's impartiality." ' *See In re Cooke, supra,* 160 B.R. at 706 (quoting *United States v. Kehlbeck,* 766 F.Supp. 707, 712 (S.D.Ind.1990)) and cases cited therein.

> A judge is neither required nor encouraged to forego social interaction and involvement upon assuming his or her office. As noted in the commentary to Canon 5A of the Code of Conduct for United States Judges, "Complete separation of a judge from extra-judicial activities is neither possible nor wise; a judge should not become isolated from the society in which the judge lives ."

*In re Cooke, supra,* 160 B.R. at 706. In addition, "a judge's friendship with a lawyer appearing before the judge does not give rise to an appearance of partiality unless that friendship is very much out of the ordinary course, and presents a potential for actual impropriety if the worst implications are realized." *Id., citing United States v. Murphy,* 768 F.2d 1518, 1537 (7th Cir.1985) ("In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable."), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986).

The debtor does not state or suggest any extrajudicial or judicial relationship which might be a basis for the alleged favoritism or the asserted "unusually close relationship." In fact I do not have and never have had any personal, familial, social, professional, financial or any other relationship with trustee Coan, or for that matter, with any of the trustees that serve in this district. Moreover, I have no motive to favor trustee Coan, and the debtor identifies none. I did not meet Richard Coan until I became a judge. My only contact with trustee Coan has been in my capacity as a judge and his capacity as trustee and/or attorney for the trustee. He may also have served as an attorney for other clients in this court, but I have no specific recollection of such representation.

The debtor also alleges that I have ignored her "documented and proven complaint[s] about the trustee." Just as the 1997 Sale Order relied upon the bankruptcy code to address the debtor's conversion motion, *see supra* at 637, my December 12, 1997 *nunc pro tunc* order relied upon the code, the model rules of professional conduct, and applicable case law to address the debtor's complaints about trustee Coan. *In re Hutter, supra,* 215 B.R. 308. As noted, the United States Trustee is charged with the duty of supervising trustees, *see* 28 U.S.C. § 586(a)(1), (3). The dockets in this bankruptcy case and the adversary proceeding do not disclose that the office of the United States Trustee has filed any objection or statement opposing anything that trustee Coan has done or attempted to do in this case. Indeed that office supported the trustee's application for the appointment of his law firm *nunc pro tunc. See In re Hutter, supra,* 215 B.R. at 311. Furthermore, the United States Trustee has opposed the debtor's motion to recuse.

The debtor's final assertion that I have shown favoritism toward the trustee is that "[e]ach time Richard Coan made a request, it was granted. Each time Mrs. Hutter made a request, it was denied." *Supplement to Motion* at ¶ 8. The debtor fails to provide any support for that assertion and cites no reference to any matter in this case. In fact, her assertion is false and is belied by the record.

Not only were the trustee's requests denied on several occasions, including his applications for attorney's fees and costs because he failed to file a retention order, *see In re Hutter,* 207 B.R. at 994, and *supra* at 639–640, but the debtor's requests were granted on several occasions, including her request that I abstain from hearing her counterclaim against Household. *See Debtor's June 16, 1997 Motion for Removal of Action; July 14, 1997 Order Granting Discretionary Abstention.* In addition, I note that on several occasions I granted, over the repeated objections of the trustee, continuances requested by the debtor and/or Gerhard Hutter. Moreover, even assuming that I denied the debtor's motions more often than those of the trustee, and sustained his objections more

often than I did hers, those rulings do not demonstrate bias.

### Hearings Conducted Without the Debtor's Representation

The debtor's final allegation in support of her recusal motion is that I conducted hearings on January 10 and April 21, 1997, at which she was neither present nor represented, and at which "[I] discussed how [I] was going to rule in [her] case with the attorneys for the other parties...." *Motion to Disqualify* at 5.

The January 10 hearing was scheduled to consider the debtor's motion to reconvert her case from chapter 7 to chapter 13. The debtor received notice of that hearing. She did not attend. The transcript of that hearing discloses my statement that the debtor was not eligible for chapter 13 when she first filed her bankruptcy petition and she was ineligible when she filed the motion to reconvert. *See Transcript* at 4. As a consequence, I directed the trustee to prepare an order to show cause why the debtor should not be sanctioned under Rule 9011(a) F.R. Bankr.P. for filing that motion. *Id.* at 7–8. Those statements in the debtor's absence were appropriate. Indeed, without those preliminary observations regarding the debtor's ineligibility for chapter 13 relief, there would have been no basis to direct the preparation of an order to show cause. There was no substantive ruling on January 10, nor did I state "how I was going to rule in her case." Instead, I took steps to ensure that the debtor would be in court on a later date, so that a hearing could be conducted on the legitimacy of her motion to reconvert her case to chapter 13 and any sanctions that should be imposed if she could not justify that motion.

The debtor also received notice of the April 21 hearing, which was scheduled to consider, *inter alia*, whether the trustee was entitled to attorney's fees and expenses incurred responding to the debtor's motion to reconvert. Again, the debtor declined to attend. The tape of that hearing, for which there is no transcript, has been reviewed. I made no statement that trustee Coan was entitled to a fee or reimbursement of expenses. Instead, I merely stated that a written decision would follow, addressing, *inter alia*, whether sanctions would be imposed against the debtor under Rule 9011(a), and "[took] the papers." *See Tape* at 469.[7] Moreover, as noted, I ruled, *sua sponte*, that trustee Coan's law firm was not entitled to compensation because he failed to seek and obtain court approval for the employment of his firm to represent the estate. *In re Hutter, supra,* 207 B.R. at 994.

Accordingly, it is concluded that the debtor's recusal motion should be denied, irrespective of its late filing. That conclusion is buttressed by District Judge Squatrito's January 14, 1998 decision denying the Hutters' motion for stay of the auction sale pending appeal: "Mr. Hutter has not shown that the bankruptcy court's ruling was tainted by an impermissible animus against Mrs. Hutter." (attached herein as Appendix A).

### II.

### Motion to Reschedule Sale

■ Some additional background is provided in addressing the trustee's motion to

---

**7.** The April 21, 1997 hearing discloses that I made the following statements:

... in addition to anything that the trustee would be entitled to get for any violation for Rule 9011, sanctions are also appropriate if the court finds that there was a violation of 9011 and believes that a sanction should follow for the purposes for which sanctions are generally imposed .... I will take the papers on the 9011 matter....

A decision will follow. It is almost in final form and should issue in the next day or so, which will address the issues that the debtor has asked me to clarify. The debtor wanted me to clarify my denial of her request for the appointment of a pro bono attorney. She wanted me to clarify my order denying her request for a continuance. A memorandum and order will enter which will address those questions....

All right. I am going to consider what I have heard today together with what I have heard on other days and the records in this case and I will render a decision, file a memorandum and order on all of the outstanding issues, at least the ones so far.... What I will take up is the trustee's motion for judgment [and] any sanctions that are appropriate. I will take up the sanctions appropriate for 9011 ... I will enter a separate ruling on a stay pending appeal, and as noted I will schedule the other matters that the debtor filed today.

*Tape* at 403–449, 477–529, and 841–892.

reschedule the auction sale, which was also heard on April 14, 1998, in order to present the context in which it arose.

On July 15, 1997, separate orders entered which (i) approved the trustee's notice of an auction sale on July 29; and (ii) permitted the trustee to sell the Property free and clear of interests, claims, and liens. *See* 11 U.S.C. § 363(b), (f) and (h).

The Hutters filed various notices of appeal from, *inter alia*, the 1997 Sale Order and subsequent orders related to the auction sale of the Property. *See supra* at 633–634. On July 21, the Hutters retained counsel to represent them in their appeals. On July 25, the district court stayed the scheduled auction sale of the Property, pending a final ruling on the motion for stay pending appeal, attached as Appendix C. On January 14, 1998, the district court entered an order denying the Hutters' motion for a stay of the sale pending appeal and vacated the July 25 stay order.

On February 2, 1998, the trustee filed a Motion for Order Compelling Defendant to Permit Open House by Auctioneer and Auction Sale of the Property of the Estate; Motion to Sell Real Property Free and Clear of Interests, Claims, and Liens; and Notice of Sale of Property of the Estate.[8] The Hutters objected. A hearing was conducted on March 3, 1998, at which the objections were overruled. The court ruled, *inter alia*, that an order would enter setting a sale date of March 27.

On March 11, prior to the entry of the sale order, the Hutters filed a Notice of Motion for Reimplementation of Stay Pending Resolution of Appeal in the United States Court of Appeals for the Second Circuit. On March 19, that court entered a temporary stay of the sale scheduled for March 27, pending a hearing on the motion on March 31. On March 31, the court denied the motion for stay pending appeal.

On April 2, the trustee filed the instant motion to reschedule the auction sale of the Property to May 22, to which the Hutters

filed an April 13 objection. Household and Putnam filed limited objections, seeking an earlier sale date of May 1. The Hutters contend, as they did at the March 3 hearing, that this court was divested of jurisdiction as the judgment and sale orders are currently on appeal, and that the effect of the October 20, 1997 district court order was to modify the sale from an auction sale to a private sale.

Although the court lacks jurisdiction to alter or amend an order which is on appeal, *In re Overmyer*, 136 B.R. 374, 375 (Bankr.S.D.N.Y.1992), it retains the authority to implement or enforce previous orders absent a stay pending appeal. *See In re Prudential Lines, Inc.*, 170 B.R. 222, 243 (S.D.N.Y.1994) ("[W]hile an appeal of an order or judgment is pending, the court retains jurisdiction to implement or enforce the order or judgment"); *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 798 (9th Cir.BAP 1995). There is no stay pending appeal of the 1997 Sale Order. The court is not asked to modify or alter that order but rather to implement the terms and conditions of that order and the corresponding orders which set sale dates.

The Hutters' assertion that a private sale was ordered by the district court on October 20, 1997 is equally unavailing. The district court's margin order, attached as Appendix D, *authorized* the trustee to retain a real estate broker, it did not *order* such retention. Even more to the point, however, is the Court of Appeals' March 31, 1998 order denying the Hutters' Motion for Reimposition of Stay of Bankruptcy Sale Pending Disposition of Appeal. *See* Appendix B. In their Notice of Motion, the Hutters twice specifically identified the sale that they were seeking to stay as an *auction* sale, *id.*, and the Court of Appeals referred to the sale as an *auction* sale.

### ORDER

Accordingly, IT IS ORDERED that the debtor's motion for disqualification is denied;

---

**8.** The motions and the notice were substantially the same as the previous motions and notice that

were granted on May 30 and June 24, 1997.

IT IS FURTHER ORDERED that the trustee's Motion to Reschedule Auction Sale is granted;

IT IS FURTHER ORDERED that the Auction Sale shall be conducted on June 19, 1998; and

IT IS FURTHER ORDERED that the debtor and Gerhard Hutter are prohibited from interfering with the Auction Sale of the Property.

### APPENDIX A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE:
NANCE HUTTER,
Debtor.

Case No. 3:97cv1049(DJS)

RICHARD COAN, TRUSTEE
v.
GERHARD P. HUTTER

Case No. 3:97cv1050(DJS)

### MEMORANDUM OPINION AND ORDER

#### I

The appellants, Gerhard and Nance Hutter, have filed these appeals in Nance Hutter's Chapter 7 bankruptcy case and Gerhard Hutter's adversary proceeding.[1] They move to stay various orders of the United States Bankruptcy Court for the District of Connecticut entered in those proceedings. Principally, they seek to block the sale of their residence by the Chapter 7 trustee and the sale of Gerhard Hutter's co-ownership interest in the property. In addition, they move to stay sanctions of $2,500 entered against each.

On July 8, 1997, this court held oral argument in which the appellants were *pro se.*

On July 21, 1997, the Hutters obtained counsel. Accordingly, to permit a full brief-

---

1. Familiarity with the bankruptcy court's ruling in *In re Hutter*, 207 B.R. 981 (Bankr.D.Conn. 1997) is assumed.

2. 11 U.S.C. § 363(h) provides:

    [T]he trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and

ing of the issues, this court entered a temporary stay on the sale of the property pending a final ruling on the motion for a stay pending appeal. This court held further oral argument on August 7, 1997.

#### II

Our Court of Appeals has set forth the following factors to be considered in determining whether to stay the actions of a trial court pending appeal:

(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected.

*Hirschfeld v. Board of Elections,* 984 F.2d 35, 38 (2d Cir.1993) (citations and quotations omitted). This standard applies to appeals from the bankruptcy court. *See In re Country Squire Associates of Carle Place, L.P.,* 203 B.R. 182, 183 (2d Cir. BAP 1996).

These appeals contain issues of both fact and law. Findings of fact must be accepted unless they are clearly erroneous. *See; e.g., In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988–89 (2d Cir.1990), *cert. denied,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). On the other hand, conclusions of law are not entitled to the same deference. *In re Gaudet,* 132 B.R. 670, 672 (D.R.I.1991). Rather, they are reviewed *de novo. In re Ionosphere,* 922 F.2d at 988–89.

#### III

#### *Entry of Judgment Against Mr. Hutter*

On May 3, 1996, the trustee commenced the adversary proceeding against Mr. Hutter seeking to sell the residence free and clear of Mr. Hutter's co-ownership interest, pursuant to 11 U.S.C. § 363(h).[2] The bankruptcy

---

the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

court granted Mr. Hutter four continuances of the trial date, two of which were due to Mr. Hutter's claims of ill health. On November 27, the court entered two discovery orders: one ordering the deposition of Mr. Hutter and his physician; the other ordering Mr. Hutter to undergo a physical examination. Mr. Hutter did not appear at the medical examination or his deposition, claiming illness. On December 20, 1996, the trustee moved for judgment as a sanction for Mr. Hutter's failure to comply with discovery orders.[3] *Hutter*, 207 B.R. at 984–85. The court entered a further order compelling Mr. Hutter to appear at the physical examination. Again he failed to attend, claiming he was too ill. On April 30, 1997, the court granted the trustee's motion, entered judgment in favor of the trustee, and imposed a sanction of $2,500 on Mr. Hutter for "abuse of the bankruptcy process." *Id.* at 988. The bankruptcy court held the following:

> The defendant's failure to obey the orders of this court supports the trustee's argument that he is attempting to impede the administration of this case by deferring the payment of debts owed to a taxing authority since 1990 and secured creditors since 1991. That explanation is buttressed by the observation that the onset of the defendant's alleged symptoms routinely coincided with the dates of court ordered medical examinations. He simply declined to attend and then offered the excuse that he was too ill to travel. Accordingly, judgment will enter in favor of the trustee.

*Id.* at 987. In addition, the court held that the trustee would likely prevail on the merits of the adversary proceeding. *Id.* at n. 5.

Mr. Hutter argues that his conduct (assuming the bankruptcy court's characterizations of it to be true) falls fall short of that found necessary in *Bambu Sales, Inc. v.*

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
(4) such property is not used in the production, transmission, or distribution, for sale, of

*Ozak Trading Inc., Inc.*, 58 F.3d 849 (2d Cir.1995) to justify entry of judgment. In *Bambu Sales*, the district court was presented with a defendant who failed to comply with discovery requests for over one year. After the plaintiff moved for judgment, the defendant still refused to provide the discovery, claiming illness. The district court, finding no evidence of illness, entered judgment, which was upheld by the Court of Appeals. *Id.* at 852–53.

Mr. Hutter asserts that his conduct does not consist of the lengthy and obstreperous delays found in *Bambu Sales*, and, unlike that case, he did present evidence of illness. In addition, he argues that the bankruptcy court's opinion betrays an impermissible desire to punish Mr. Hutter for the perceived misconduct of Mrs. Hutter.

This court disagrees. Although Mr. Hutter did provide evidence of a medical illness, the bankruptcy court was suspicious and ordered a medical examination, which Mr. Hutter failed to attend, canceling it three times. The bankruptcy court found that the Hutters' conduct—the failure to obey court orders, the firing of attorneys, the medical excuses, the attempt "to impede the administration" of the bankruptcy case over *several* years (not just two as in *Bambu Sales* )—was sufficient to support a finding of willful failure to comply with a court order and impose this most severe sanction against Mr. Hutter.

Turning to Mr. Hutter's allegation that the court sought to punish him for Mrs. Hutter's misconduct, this court again finds that, at this stage of the litigation, Mr. Hutter has not shown that the bankruptcy court's ruling was tainted by an impermissible animus against Mrs. Hutter.

An application of the factors set forth in *Hirschfeld* indicates that Mr. Hutter is not entitled to the relief sought.

electric energy or of natural or synthetic gas for heat, light, or power.

**3.** This motion served adequate notice on Mr. Hutter that an entry of default could issue upon continued failure to comply with court orders. *See Bambu Sales v. Ozak Trading Inc.*, 58 F.3d 849, 852–853 (2d Cir.1995).

First, although Mr. Hutter will suffer great injury absent the stay—namely the loss of his home—he has not demonstrated a "substantial possibility" of success on appeal. Mr. Hutter faces a difficult hurdle in showing that the detailed factual findings the bankruptcy court (and the legal conclusions drawn from them) made in imposing judgment against him in the adversary proceeding are erroneous. For the reasons set forth above, the court finds there is not a substantial possibility of making this showing.

Second, the court finds that the public interest in this case weighs heavily in favor of denying the relief. The bankruptcy court found that the appellants have engaged in:

> ... a long series of coordinated attempts by the debtor and her husband ... to hinder and delay their secured creditors in the Connecticut court system, and then, when the Connecticut Supreme Court denied their petition for certification, they continued those efforts in this court by repeated attempts to obstruct the bankruptcy process.

*Hutter*, 207 B.R. at 982. The Hutters have not presented any credible evidence to counter this finding of the bankruptcy court. The public has a strong interest in preventing the abuse of the court system by those unable to pay their debts in a timely fashion.

Lastly, the court turns to Mr. Hutter's constitutional challenge to 11 U.S.C. § 363(h). The court first notes that it appears that Mr. Hutter did not raise his constitutional challenge in the bankruptcy court.[4] *See Hutter*, 207 B.R. at 984 n. 3 ("During the status conference (on the trustee's motion for summary judgment), the defendant conceded that the only disputed issue was § 363(h)(3)"). If so, this issue was not preserved for appeal. *See Sheridan Square Partnership v. United States*, 66 F.3d 1105, 1108 (10th Cir.1995) (constitutional challenge not raised before trial court is not preserved for appeal, even if non-frivolous). In any event, the court finds that a constitutional challenge to 11 U.S.C. § 363(h) would likely

fail. *See In re Bernier*, 176 B.R. 976 (Bankr. D.Conn.1995) (Shiff, J.).

### Mrs. Hutter's Objection to Putnam Trust's Claim

In the appellants' statement of issues on appeal, they raise the issue of whether the bankruptcy court erred in overruling Mrs. Hutter's objections to the Putnam Trust proof of claim. However, in the body of the brief, the appellants appear to argue only that Mrs. Hutters' objection to Putnam Trust's claim cannot provide the basis for sanctions against her. To the extent Mrs. Hutter appeals the bankruptcy court's ruling upholding Putnam Trust's claim, the court finds that she has not shown a substantial possibility of success on her challenge to the validity or amount of the mortgage. *See In re Hutter*, 207 B.R. at 989–90.

### $2,500 Sanctions on Mr. and Mrs. Hutter

On April 30, 1997, the bankruptcy court imposed a fine of $2,500 on Mrs. Hutter for "her frivolous objection to Putnam's claim and related application for pro bono attorney and motions for a continuance [which] have wasted many hours of court time." *Id.* at 993. In addition, the court imposed a $2,500 sanction on Mr. Hutter for his "defiance of this court's discovery order and abuse of the bankruptcy process." *Id.* at 988. This court finds that on this issue, the appellants has met the standard *Hirschfeld, supra.* The imposition of the sanctions on the Hutters will cause them substantial harm because of their limited financial resources. However, staying the sanctions pending appeal will have only a minimal effect on the public's interest in deterring the abuse the court system.

### IV

The motions for stay pending appeal [Case No. 3:97cv1049, Doc. No. 8; Case No. 3:97cv1050, Doc. No. 16] are GRANTED in part and DENIED in part as follows: the court's order dated July 25, 1997 staying the sale of certain real estate known as 933 Lake Avenue, Greenwich, Connecticut is hereby

---

4. Mr. Hutter submitted an unsigned copy of an "answer" to the adversary complaint as part of

his record on appeal: no constitutional challenge is plead.

VACATED; and the sanctions of $2,500 on Mr. & Mrs. Hutter are hereby STAYED pending appeal.

The parties shall file memoranda with this court by January 30, 1998 stating any issues in addition to the sanctions which remain pending before this court.

It is so ordered.

DATED at Hartford, Connecticut, this 14th day of January, 1998.

*s* Dominic J. Squatrito
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT
JUDGE

## APPENDIX B

T 1080
2/93

# 4/31/98
3/31/98

## United States Court of Appeals
### FOR THE SECOND CIRCUIT

ORIGINAL PAGE 1

Each motion must be accompanied by a supporting affidavit (Local Rule 27(a)).

NANCE HUTTER v. RICHARD COAN, TRUSTEE (Lead Case)

GERHARD P. HUTTER v. RICHARD COAN, TRUSTEE

(Consolidated cases)

*Use short title*

Case No. 98-5010(L)
*Docket Number*

**NOTICE OF MOTION**
*state type of motion*

for Reimplementation of Stay of Bankruptcy Sale Pending Disposition of Appeal

MOTION BY: *(Name, address and tel. no. of law firm and of attorney in charge of case)*
Pepe & Hazard LLP
Goodwin Square, Hartford, CT 06103
James C. Graham, Esq.
(860) 241-2677

OPPOSING COUNSEL: *(Name, address and tel. no. of law firm and of attorney in charge of case)*
Coan, Lewendon, Royston & Gulliver
495 Orange Street, New Haven, CT 06511
Timothy D. Miltenberger, Esq.
(203) 624-4756

Has consent of opposing counsel:
A. been sought?  ☒ Yes  ☐ No
B. been obtained?  ☐ Yes  ☒ No
Has service been effected?  ☒ Yes  ☐ No
Is oral argument desired?  ☒ Yes  ☐ No
*(Substantive motions only)*
Requested return date:  March 24, 1998
*(See Second Circuit Rule 27(b))*
Has argument date of appeal been set:
A. by scheduling order?  ☐ Yes  ☒ No
B. by firm date of argument notice?  ☐ Yes  ☒ No
C. If Yes, enter date: _____ N/A _____

Judge or agency whose order is being appealed:

**EMERGENCY MOTIONS, MOTIONS FOR STAYS & INJUNCTIONS PENDING APPEAL**

Has request for relief been made below?  ☒ Yes  ☐ No
*(See F.R.A.P. Rule 8)*
Would expedited appeal eliminate need for this motion?  ☐ Yes  ☒ No
If No, explain why not: Bankruptcy auction sale of non-debtor's interest in marital premises has been scheduled for Friday, March 27, 1998. This Motion seeks to stay the sale pending disposition of this appeal. An expedited appeal could not be disposed of in time.
Will the parties agree to maintain the status quo until the motion is heard?  ☐ Yes  ☒ No

Hon. Dominic J. Squatrito, U.S.D.J.

Brief statement of the relief requested: By this motion Appellants seek reinstatement, pending full briefing and determination on the merits, of a District Court's recently vacated stay of a Bankruptcy Court's orders (i) imposing default judgment as a discovery sanction in an adversary proceeding seeking to authorize the sale of a non-debtor's one-half interest in his marital residence pursuant to 11 U.S.C. §§ 363(h), and thereafter (ii) authorizing an auction sale of that home.
Complete Page 2 of this form.

By: *(Signature of attorney)*
*James C. Graham*

Signed name must be printed beneath
James C. Graham
James C. Graham

Appearing for: *(Name of party)*
Appellants Nance Hutter and Gerhard P. Hutter

Date

March 11, 1998

Appellant or Petitioner:
☒ Plaintiff  ☐ Defendant
Appellee or Respondent:
☐ Plaintiff  ☒ Defendant

**ORDER**

*Kindly leave this space blank*
BEFORE: PARKER, CJ., EGINTON and GLASSER, DJJ.

IT IS HEREBY ORDERED that the motion be and it hereby is ~~GRANTED~~ denied,

FILED
MAR 31 1998
GEORGE LANGE III, CLERK
SECOND CIRCUIT

FOR THE COURT
GEORGE LANGE III, Clerk
By: _____
Arthur M. Heller
Administrative Attorney

March 31, 1998

*APPENDIX C*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD COAN, TRUSTEE

v.

GERHARD P. HUTTER

Case No. 3:97cv1050(DJS)

### ORDER

**UPON CONSIDERATION OF** the motion of appellant Gerhard P. Hutter for leave to schedule, on shortened notice, additional argument on motion for stay pending appeal, and for stay pending reargument, good cause having been shown, the motion is hereby **GRANTED**, and it is

**ORDERED AND DECREED**, that pending further order of this court, the proposed auction sale of that certain real property known as 993 Lake Avenue, Greenwich, Connecticut, shall be, and hereby is, **STAYED**.

**It is so ordered.**

DATED at Hartford, Connecticut, this 25th day of July, 1997.

*s*Dominic J. Squatrito
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT
JUDGE

### APPENDIX D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

In Re:
NANCE HUTTER,
Debtor

Chapter 7

Case No. 94–52227.

GERHARD HUTTER, Appellant,

v.

RICHARD M. COAN, TRUSTEE, Appellee.

Civil Action No. 3:97CV1050(DJS)

October 9, 1997

### JOINT MOTION FOR RELIEF PENDING APPEAL

Richard M. Coan, Trustee of the Bankruptcy Estate of Nance Hutter, by and through his attorneys, Coan, Lewendon, Royston, Deming & Gulliver. and Gerhard Hutter and Nance Hutter, by and through their attorneys, Pepe & Hazard, LLP, hereby move for relief pending appeal pursuant to Rule 8005, Fed, R. Bankr., and in support of their motion, state as follows:

1. The Bankruptcy Estate of Nance Hutter owns a one-half interest in 993 Lake Avenue, Greenwich, Connecticut. Gerhard Hutter owns the other one-half interest.

2. On April 30, 1997, the bankruptcy court entered an order permitting the Trustee to sell his one-half interest in the property along with Gerhard Hutter's one-half interest in the property pursuant to 11 U.S.C. § 363(h). Gerhard Hutter has appealed that order to this Court.

3. The Hutters signed a listing agreement with Joyce Somm of Coldwell Banker Real Estate Services, Inc. The Trustee applied for authority to engage Joyce Somm of Coldwell Banker Real Estate Services, Inc. to market 993 Lake Avenue in Greenwich, Connecticut. If the broker is to be paid from the proceeds of the sale which belong to the Bankruptcy Estate of Nance Hutter, her retention as a broker for the bankruptcy estate must be approved, generally in advance, under relevant provisions of the Bankruptcy Code. *See* 11 U.S.C. § 327.

4. At the hearing on the application on September 16, 1997, counsel for the Trustee disclosed that the Trustee intended to list the property in conjunction with Gerhard Hutter, the owner of the other half-interest in 993 Lake Avenue.

5. The Bankruptcy Court declined to enter the order authorizing the retention of the real estate broker, observing that the procedures under which 993 Lake Avenue may be sold are on appeal to the United States District Court.

6. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control of those aspects of the case involved in the appeal." *In re Wonder Corporation of America*, 81 B.R. 221, 224 (Bkrtcy.D.Conn.1988), *citing Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 401–402, 74

L.Ed.2d 225 (1982)(per curiam). This transfer of jurisdiction preserves the integrity of the appellate process by preventing the confusion sure to arise if the same issue is presented in two courts concurrently. *In re Wonder Corporation of America*, 81 B.R. at 224.

7. The Trustee, Gerhard Hutter and Nance Hutter desire to have the property listed with a qualified broker while this Court considers the Motion for Stay Pending Appeal filed by Gerhard Hutter.

8. As shown in the attached affidavit, neither Joyce Somm nor Coldwell Banker Real Estate Services, Inc. have an interest adverse to the Bankruptcy Estate of Nance Hutter. Both Joyce Somm and Coldwell Banker Real Estate Services, Inc. are qualified to market real property in Greenwich, Connecticut. The Office of the United States Trustee has no objection to the entry of an order approving the retention of Coldwell Banker Real Estate Services, Inc. by the Bankruptcy Estate of Nance Hutter.

WHEREFORE, Richard M. Coan, Trustee of the Bankruptcy Estate of Nance Hutter, Gerhard Hutter and Nance Hutter, hereby request that this Court enter an order authorizing the retention of Coldwell Banker Real Estate Services, Inc.

RICHARD M. COAN, TRUSTEE

By *s*Timothy D. Miltenberger
Timothy D. Miltenberger (ct08874)
Coan, Lewendon, Royston Deming
& Gulliver
495 Orange Street
New Haven, CT 06511
(203) 624-4756
His Attorney

GERHARD HUTTER AND
NANCY HUTTER

By *s*James C. Graham
James C. Graham
Pepe & Hazard LLP
Goodwin Square
Hartford, CT 06103

(860) 522-2796
Their Attorneys