### In re SCOTT CABLE COMMU-NICATIONS, INC., Debtor.

**United States of America, Plaintiff,**

**v.**

**State Street Bank and Trust Company, as Indenture Trustee for Junior Subordinated Secured PIK Notes, Defendant,**

**Scott Cable Communications, Inc., Intervenor–Defendant.**

**Bankruptcy No. 98–51923.**
**Adversary No. 98–5104.**

United States Bankruptcy Court, D. Connecticut.

April 26, 1999.

Ira Goldman, Shipman & Goodwin, Hartford, CT, for State Street Bank and Trust Company as Indenture Trustee.

Daniel H. Golden, Brian Cogan, Stroock & Stroock & Lavan LLP, New York City, for Scott Cable Communications.

Craig I. Lifland, Zeisler & Zeisler, P.C., Bridgeport, CT, for Scott Cable Communications.

Deirdre A. Martini, Assistant United States Attorney, United States Department of Justice, Bridgeport, CT, for Internal Revenue Service.

John V. Cardone, United States Department of Justice, Tax Division, Washington, D.C., for Internal Revenue Service.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ALAN H.W. SHIFF, Chief Judge.

The plaintiff Internal Revenue Service filed the instant adversary proceeding,

seeking a determination that the holders of certain notes should be treated as holding an equity interest or their claims should be equitably subordinated to its claim, notwithstanding the order in a prior bankruptcy proceeding which treated those note holders as holders of a security interest. The defendants have moved for summary judgment. The parties have stipulated that the issue to be determined here is whether the confirmation order entered in the prior bankruptcy proceeding bars the instant adversary proceeding.

### Summary Judgment

Summary judgment may be granted only when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. *See Fran Corp. v. United States of America,* 164 F.3d 814, 816 (2nd Cir.1999) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The stipulated issue raises no material factual dispute.

### BACKGROUND

On April 6, 1999, the parties filed an Amended Joint Stipulation of Facts for the Position Papers Submitted by the United States of America, State Street Bank & Trust Company and Scott Cable Communications, Inc. with attached documents. ("Joint Stipulation"). The stipulated facts are indented and single spaced, and for clarity, the court has interlineated additional text which is derived from the exhibits attached to the stipulation and has modified the sequence of the numbered paragraphs of the Joint Stipulation.

On February 14, 1996, Scott Cable Communications, Inc., along with six affiliated corporations ["Original Scott"], filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware [the "Delaware Proceeding"]. *Joint Stipulation* ¶ 1.

On February 28, 1996, Assistant United States Attorney Ellen W. Slights of the United States Attorney's Office for the District of Delaware filed a Notice of Appearance and Request For Matrix Entry and Request For Service of Notices and Documents on behalf of the United States of America in the [Delaware Proceeding]. *Id.* ¶ 2.

The Notice of Appearance provides: "The United States of America is a party in interest in these cases." *Exhibit 5 to the Joint Stipulation,* at 1.

On June 12, 1996, Assistant United States Attorney Ellen W. Slights filed a Notice of Appearance, Request For Matrix Entry and Request For Service of Notice and Documents and Motion For Admission Pro Hac Vice for Attorney Miriam Howe, Assistant District Counsel on behalf of the Internal Revenue Service ["IRS"] in the [Delaware Proceeding]. *Joint Stipulation* ¶ 3.

The United States of America on behalf of the [IRS] did not file a Proof of Claim for prepetition federal taxes or a Request For Payment of Administrative Expenses in the [Delaware Proceeding]. *Id.* ¶ 4.

On October 31, 1996, [Original Scott] filed a Second Amended Joint Plan of Reorganization entitled "Debtor's Second Amended Joint Plan of Reorganization" [the "Delaware Plan"]. *Id.* ¶ 5.

Class 7 of the Delaware Plan is a class of unsecured claims held by the holders of Unsecured Junior Subordinated Notes. *See Delaware Plan, Exhibit 1 to the Joint Stipulation,* § 3.7, at 14. The treatment of that class is stated in Section 4.7.

Section 4.7 of the [Delaware Plan] provides as follows:

In full satisfaction of the Allowed Class 7 Claims, each holder thereof shall receive on the Effective Date (a) a negotiable certificate representing each holders' Ratable Share of its undivided interest in eighty-five (85%) percent of the New Restructured Third Secured PIK Notes and (b) its ratable Share of all of the

New Class B Common Stock. [*Delaware Plan*, at 17].

Section 1.49 of the [Delaware Plan] defines a "New Restructured Third Secured PIK Note" in part as follows: New Restructured Third Secured PIK Notes means the new promissory note to be issued by Reorganized Scott[1] to the holders of the Class 6 and Class 7 claims ... The New Restructured Third Secured PIK Note[s] shall ... (iv) be secured by a lien on all of the assets of [Reorganized] Scott.... [*Delaware Plan*, at 8]. *Joint Stipulation* ¶ 6b.

On October 31, 1996, [Original Scott] filed a Second Amended Disclosure Statement entitled the "Second Amended Disclosure Statement and Seconded Amended Joint Plan of Reorganization" [the "Delaware Disclosure Statement"]. *Id.* ¶ 5a.

In describing and summarizing the [Delaware Plan], the [Delaware Disclosure Statement] provides in relevant part:

The New Restructured Third Secured PIK Notes will be issued pursuant to the New Restructured Third Secured PIK Notes Indenture to be dated as of the Effective Date between the Reorganized Scott and the New Third PIK Note[s] Indenture Trustee. The New Restructured Third Secured PIK Notes shall ... (iv) be secured by a lien on all of the assets of Reorganized Scott.... The Form of the New Restructured [T]hird Secured PIK Notes and the New Restructured Secured PIK Note[s] Indenture shall be filed with the Bankruptcy Court no less than ten (10) days prior to the hearing on confirmation of the plan. [*Delaware Disclosure Statement*, § E.2, at 27–28]. *Joint Stipulation* ¶ 6a.

The Delaware Plan contemplated a "Transaction Event," defined as "(i) the merger, consolidation, liquidation, reorganization or dissolution of Reorganized Scott, (ii) the sale of all of the cable televi-

sion systems currently owned by Scott, or (iii) any similar transaction...." *Delaware Plan*, § 10.6, at 30. The Delaware Disclosure Statement, in discussing the Delaware Plan and specifically Class 7, stated "payments due on New Restructured Third Secured PIK Notes will be made from a subsequent refinancing and/or sale of one or more of the cable television systems...." *Delaware Disclosure Statement, Exhibit 2 to the Joint Stipulation*, § V.D.9, at 25. *See also id.*, § VII.E, at 39.

The Delaware Disclosure Statement further provided: "there is no assurance that Reorganized Scott will be able to realize the value necessary to pay ... the New Restructured Third Secured PIK Notes.... In the event the ... New Restructured Third Secured PIK Notes cannot be paid off in full at maturity, it may be necessary for Reorganized Scott to commence another case under the Bankruptcy Code, in which event the claims represented by the ... New Restructured Third Secured PIK Notes should be secured claims ... as opposed to the unsecured status of [Class 7] claims under the Plan." *Delaware Disclosure Statement, Exhibit 2 to the Joint Stipulation*, § VII.E, at 40.

The [Delaware Plan] was confirmed by order of the Delaware Bankruptcy Court dated December 6, 1996 [the "Delaware Confirmation Order"]. *Joint Stipulation* ¶ 6.

The [Delaware] Confirmation Order, in relevant part, provides as follows:

a. The terms and conditions of the New Restructured Second Secured PIK Note Indenture and New Restructured Third Secured PIK Note Indenture, and the forms thereof as may be finalized upon the execution thereof by the Reorganized [Scott], shall constitute the legal, valid, and binding obligations of the Reorganized [Scott], enforceable against

---

1. Reorganized Scott is described in the Delaware Plan as the entity which emerged from bankruptcy. *See Delaware Plan, Exhibit 1 to the Joint Stipulation*, § 1.71 at 11.

the Reorganized [Scott] ... in accordance with their respective terms and are entered into for good and valuable consideration, including the benefits of the [Delaware Plan]. [*Delaware Confirmation Order*, ¶ 13 at 11].

b. On the concurrence of the Effective Date, except as otherwise provided in the [Delaware] Plan or [the Delaware Confirmation] Order, all assets of the estates of [Original Scott] shall vest in the Reorganized [Scott], subject to the provisions of the [Delaware] Plan and [the Delaware Confirmation] Order. [*Id.*, ¶ 7 at 9].

c. In accordance with Section 1141(c) of the Code, except as otherwise provided in the [Delaware] Plan or [the Delaware Confirmation] Order, effective as the Effective Date, all property of [Original Scott] is free and clear of all claims and interests of Claim and Interest holders of [Original Scott]. [*Id.*, ¶ 8].

d. The [Delaware] Plan and its provision[s] shall be binding upon (i) [Original Scott], (ii) any entity acquiring or receiving property under the [Delaware] Plan, (iii) any lessor or lessee of the property of [Original Scott], and (iv) any Claim or Interest holder of [Original Scott], whether or not such Claim or interest holder is impaired under the [Delaware] Plan and whether or not such Claim or Interest holder has accepted the [Delaware] Plan. [*Id.*, ¶ 4 at 7]. *Joint Stipulation* ¶ 7.

The Indenture Trustee, with respect to the [The New Restructured Third Secured PIK Notes], was created out of and came into existence under the 1996 confirmed [Delaware Plan] and the Indenture dated December 18, 1996. *Joint Stipulation.* ¶ 8.

The following undisputed facts are derived from the record and are added to further clarify the procedural posture of the summary judgment issue:

On July 10, 1998, as contemplated by the Delaware Proceeding, Reorganized Scott executed an Asset Purchase Agreement ("Agreement") for the sale of substantially all of its assets. The capital gains tax consequences of the sale have been estimated at $29.9 million and $7.5 million for federal and state taxing authorities respectively. *See August 17, 1998 Disclosure Statement*, § VIII.B, at 48. On October 1, 1998, as further contemplated in the Delaware Proceeding, Reorganized Scott (hereafter "the Debtor") filed the instant chapter 11 bankruptcy petition in this court along with a prepackaged liquidating plan. The Agreement, which conditioned the closing of the sale on the entry of a confirmation order, was approved on November 13, 1998. The Debtor's plan did not provide for payment of any capital gains tax on the basis that the closing of the sale would occur post-confirmation and the IRS objected to confirmation. The court sustained the IRS's objection to confirmation on December 11, 1998, finding the capital gains tax was an administrative expense and that the plan was a tax avoidance scheme. *See In re Scott Cable Comm., Inc.*, 227 B.R. 596, 600 (Bankr.D.Conn. 1998).

The New Restructured Third Secured PIK Notes in the Delaware Proceeding were renamed in the Debtor's plan as "Junior Subordinated Secured PIK Notes" and are referred to in this order as "Jr. PIK Notes." On November 19, 1998, the IRS commenced this adversary proceeding against the Indenture Trustee[2] to challenge the lien corresponding to the Jr. PIK Notes and to recharacterize the Jr. PIK Notes as equity rather than debt. On December 17, 1998, the complaint was amended to add a second count alleging that the claims of the holders of the Jr. PIK Notes should be equitably subordinated to the IRS's claim.

Notwithstanding the denial of confirmation, the Debtor concluded that the sale was in the best interest of the estate and

2. On March 9, 1999, the Debtor was joined as     a defendant over the objection of the IRS.

creditors and moved for court approval, which was granted on January 14, 1999. The sale closed on or about February 12, 1999, and all secured debt senior to the Jr. PIK Note holders' claims were paid in full. Approximately $30,291,296 of the proceeds remain. Payment to the Jr. PIK Note holders, who assert a secured claim of $49,035,294 plus accrued interest, has not been made because of the instant adversary proceeding, nor has there been any distribution to any taxing authority.

## DISCUSSION

### Res Judicata

■ As noted, the parties stipulated that the threshold issue is whether the Delaware Confirmation Order precludes the litigation of this adversary proceeding. Generally, "[r]es judicata bars litigation of any claim for relief that was available in a prior suit between the same parties or their privies, whether or not the claim was actually litigated." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2nd Cir.1998). In undertaking that analysis, a court should bar subsequent litigation when (1) a prior decision was a final judgment on the merits (2) before a court of competent jurisdiction (3) involving the same parties or their privies, and (4) the same cause of action. *See Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 87–88 (2nd Cir.1997) (citing *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2nd Cir.1985)). In a bankruptcy context, an order confirming a plan of reorganization precludes the relitigation of all issues that were or could have been decided at the confirmation hearing. *See Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 873 (2nd Cir.1991). In the determination of whether the prior judgment did or could have decided the same confirmation issue, the court should view, as an aspect of the test for identity of causes of action, "whether an independent judgment in a separate proceeding would 'impair, destroy, challenge, or invalidate the enforceability or effectiveness' of the

reorganization plan...." *Corbett*, 124 F.3d at 88 (quoting *Sure–Snap v. State Street Bank and Trust Co.*, 948 F.2d 869, 875–6 (2nd Cir.1991)).

■ Res judicata does not, however, apply "where the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Computer Associates International, Inc. v. Altai, Inc.* 126 F.3d 365, 370 (2nd Cir.1997) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)), *cert. denied*, —— U.S. ——, 118 S.Ct. 1676, 140 L.Ed.2d 814. *See also Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1531 (9th Cir.1985) (The lack of personal jurisdiction due to a failure to provide notice to a party "may deprive a judgment of res judicata effect if that party did not appear in the court that rendered the judgment.")

■ The IRS challenges the res judicata effect of the Delaware Confirmation Order on the basis that it was not a final order with respect to its interests. As to the first requirement of the res judicata test, the IRS contends that although it had general notice of the Delaware Proceeding, it did not receive sufficient notice of the potentially adverse consequences of the Delaware Plan. *See United States' Supplemental Position Paper*, at 4. The IRS also argues that it did not have standing to raise an objection. Finally, it contends that it could not have prevailed even if it had standing. The IRS also claims that the third requirement has not been satisfied, i.e., it was not a party to the proceeding.

### Finality of the Delaware Confirmation Order

#### *Notice*

■ While the requirements of notice and an opportunity to be heard are usually analyzed under the Fifth Amendment's due process clause, *see City of West Covina v. Perkins*, —— U.S. ——, ——, 119

S.Ct. 678, 681, 142 L.Ed.2d 636 (1999),[3] that protection does not apply to government agencies. *See United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1089 n. 3 (6th Cir.1990). Nonetheless, "[p]rinciples of equity require that notice and an opportunity to be heard must be provided before a party [such as the IRS] can be deprived of a right [to an interest in property]. . . ." *Id.*, 916 F.2d at 1091.

■ As noted, the IRS sought and received a copy of the Delaware Disclosure Statement and the Delaware Plan, *see supra*, at 560. The Delaware Plan specifically stated that the sale of the Debtor's assets was a post confirmation option, *see supra*, at 561. Therefore, before the Delaware Plan was confirmed, the IRS had adequate notice and an opportunity to be heard on any issue that foreseeably implicated its interests, including the priority of its tax claims arising out of a sale relative to the secured status of the Jr. PIK Notes.

### Standing

■ Although standing is not expressly defined in the bankruptcy code, it has been construed broadly under § 1109(b), *see In re Martin Paint Stores*, 199 B.R. 258, 264 (Bankr.S.D.N.Y.1996), *aff'd*, 207 B.R. 57 (S.D.N.Y.1997), which provides that "[a] party in interest ... may raise and may appear and be heard on *any issue* in a case under this chapter." 11 U.S.C. § 1109(b) (1994) (emphasis added). In the context of a confirmation hearing, any party seeking to raise an objection must be "an 'aggrieved person,' [that is,] a person 'directly and adversely affected pecuniarily' by the challenged order of the bank-

ruptcy court." *In re Hutter*, 215 B.R. 308, 312 (Bankr.D.Conn.1997) (quoting *Kabro Associates v. Colony Hill Associates (In re Colony Hill Associates)*, 111 F.3d 269, 273 (2nd Cir.1997)). *See also Greer v. Gaston & Snow (In re Gaston & Snow)*, 1996 WL 694421, *7 (S.D.N.Y.1996) ("Only parties adversely affected by provisions of a plan may raise an objection to confirmation based on such provisions.") (citations omitted).[4]

■ The IRS argues that since the sale of Reorganized Scott's assets was not mandated by the Delaware Plan, but rather was a mere option, it lacked standing, and therefore the Delaware Confirmation Order was not final as to its interests. Put another way, the IRS claims that the occurrence of a taxable event was speculative, so that any objection it might have made to the Delaware Plan would have been premature and inappropriate. The argument is unpersuasive as it ignores the fact that the Delaware Plan gave the Jr. PIK Notes a secured status, *see Delaware Plan*, § 1.49 at 8, ahead of the IRS. Although the sale was not a certainty, it was clearly an option that Reorganized Scott might exercise, and if it did, the sale proceeds might not be sufficient to satisfy the IRS's claim. Since the Delaware Plan implicated the IRS's pecuniary interests, it could have sought an order that would have subordinated the Jr. PIK Note holders to any uncollected taxes arising out of the exercise of the option.

### Futility

The IRS argues in the alternative that even if it were a party in interest with standing to object to confirmation in the

---

**3.** *See also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("Th[e] right to be heard has little reality or worth unless one is informed that the matter [affecting one's property rights] is pending and can choose for himself whether to default, acquiesce or contest.")

**4.** All parties in interest do not necessarily have standing with respect to every issue in a

bankruptcy case. For example, an unimpaired creditor may not have standing to object to its treatment under a plan, *see In re Wonder Corp. of America*, 70 B.R. at 1018, 1022 (Bankr.D.Conn.1987), but it would nonetheless have standing to object to confirmation on other grounds, i.e., feasibility, § 1129(a)(11).

Delaware Proceeding and had asserted such an objection, it would not have prevailed because of the speculative nature of its claim. The argument is unpersuasive as the IRS invites this court to speculate that the Delaware Court would have had an adverse reaction to an attempt by it to protect its interests, but as noted, such an attempt would have been reasonable.

### Whether the IRS was a Party to the Delaware Proceeding

The IRS argues that the filing of its appearance in the Delaware Proceeding is of no consequence because it did so as a matter of routine. That argument suggests that the IRS might file a paper which would not necessarily serve its stated purpose. But see Rule 9011, F.R.Bankr.P.

### ORDER

For the foregoing reasons, the relief sought by the IRS in this adversary proceeding is barred by res judicata. Accordingly, the Defendants' motion for summary judgment is GRANTED; and

IT IS SO ORDERED.