In re SCOTT CABLE COMMU-
NICATIONS, INC., Debtor.

No. 98–51923.

United States Bankruptcy Court,
D. Connecticut.

Dec. 23, 2002.

Daniel H. Golden, Akin, Gump, Strauss, Hauer & Feld, LLP, New York City, Craig I. Lifland, Zeisler & Zeisler, P.C., Bridgeport, CT, for Scott Cable Communications.

Ira Goldman, Shipman & Goodwin, Hartford, CT, for State Street Bank and Trust Company as Indenture Trustee.

Peter A. Sklarew, Civil Trial Section, Northern Region, United States Department of Justice, Washington, D.C., Anne M. Nevins, Assistant United States Attorney, United States Department of Justice, Bridgeport, CT, for Internal Revenue Service.

## ORDER ON DEBTOR'S APPLICATIONS FOR INTERIM COMPENSATION

ALAN H. W. SHIFF, Chief Judge.

Because this case is complicated by its relationship to a prior bankruptcy case in the district of Delaware, a brief historical note is warranted in the analysis of the debtor's instant application for interim compensation.

Scott Cable Communications, Inc., commenced a chapter 11 case in Delaware on February 14, 1996. On December 6, 1996, the Delaware Bankruptcy Court confirmed a plan, which, *inter alia,* treated certain holders of equity as holders of secured claims ("Jr. PIK" noteholders).

On October 1, 1998, Scott (hereafter the "debtor") commenced a second chapter 11 case in this court and filed a so-called "pre-packaged" liquidating plan, pursuant to which it sought authorization to sell assets, conditioned on the entry of a confirmation order. *United States v. State Street Bank and Trust Co., et al. (In re Scott Cable Communications Inc.),* 232 B.R. 558, 562–563 (Bankr.D.Conn.1999). On November 16, 1998, the Internal Revenue Service objected to confirmation for the reason that the plan constituted a tax avoidance scheme. The objection was sustained on December 11, 1998. *In re Scott Cable Communications, Inc.,* 227 B.R. 596, 604 (Bankr.D.Conn.1998).[1]

On November 19, 1998, the IRS filed adversary proceeding 98–5104, for a determination that the Jr. PIK noteholders are holders of an equity interest or that their claims be equitably subordinated. On December 17, 1998, the defendant, State Street Bank, the indentured trustee for the Jr. PIK noteholders, filed a motion for summary judgment. The motion was granted on April 26, 1999, for the reason that the issue of secured status of the Jr. PIK noteholders was precluded by the *res judicata* effect of the Delaware Bankruptcy Court's confirmation order. *Id.,* 232 B.R. at 565 (Bankr.D.Conn.1999).

---

1. On December 23, 1998, the debtor moved for permission to sell its assets free and clear of all interests with the interests to attach to the proceeds of the sale which were to be deposited into an interest bearing escrow account. *See* 11 U.S.C. § 363(f). The debtor's motion was granted on January 14, 1999, and the sale closed on February 12, 1999. As of April 26, 1999, approximately $30,291,296 remained in the escrow account, which is the sole remaining asset in this case. The Jr. PIK noteholders assert a security interest in the fund, and the IRS and others assert administrative claims in this case. *See In re Scott Cable Communications Inc., supra,* 232 B.R. at 563. *See also* docket items 27 and 116.

On March 9, 2001, the District Court reversed, holding that although "the IRS received both the Delaware Plan and Delaware Disclosure Statement," and had filed notices of appearance in the Delaware bankruptcy proceeding, "it did not receive adequate notice . . . that its pecuniary interests would be implicated." *In re Scott Cable Communications,* 259 B.R. at 536, 538, 540 and 545 (D.Conn.2001). The adversary proceeding was remanded for further proceedings to give the IRS an opportunity to object to the consequences of the Delaware plan provisions that treated the Jr. PIK noteholders as holders of secured claims.

*Delaware Proceeding.*

On June 7, 2001, this court transferred AP 98–5104 to the Delaware Bankruptcy Court along with any administrative expense applications arising out of that proceeding after determining that that court is in the best position to construe its confirmation order in the context of the IRS' challenge. *See In re Scott Cable Communications, supra,* 263 B.R. 6, *motion for leave to appeal denied,* Case no. 3:99–CV–918, (D.Conn. August 30, 2001) (AWT).

On March 4, 2002, Delaware bankruptcy judge Walsh overruled an objection by the IRS to the debtor's motion to intervene. *See United States v. State Street Bank (In re Scott Cable Communications),* 2002 WL 417013 (Bankr.D.Del.).

The United States argues that Debtor is not entitled to intervene as a "party in interest" because it has no meaningful financial or other interest to protect in the adversary proceeding. I disagree.

Although Debtor may not have a significant financial interest in the outcome of the adversary proceeding, it does have an interest and fiduciary duty, as debtor-in-possession, to ensure that the Estate's assets are distributed in accordance with the proper legal and equitable priorities of the parties in interest. It also has an interest in the adversary proceeding because the outcome of the proceeding has the potential to disrupt Debtor's current capital structure as established by the confirmation order entered in connection with Debtor's prior reorganization case.

*Id.,* 2002 WL 417013 at *3.

*Proceeding in this court.*

On April 4, 2002, the debtor filed a motion, to which the IRS objected, for a cash collateral carve out, so that, *inter alia,* it could pay any administrative expenses that were allowed by the Delaware Bankruptcy Court.[2] *See May 1, 2002 hearing record* at 3:19. On July 18, 2002, the court overruled the IRS' objection, observing that Judge Walsh's March 4, 2002 order, which was not appealed, established the law of this case. The July 18 order also authorized a $829,400 carve out from the escrow fund to pay administrative expenses, subject to any further orders from this or the Delaware court. *See In re Scott Cable Communications,* 2002 WL 1988166 *1, n. 4 (Bankr.D.Conn.2002) *appeal pending,* Case no. 02–CV–1725 (D.Conn.) (AWT).[3]

On October 22, 2002, the debtor filed an application for $141,708.50 and $33,926.47 for the interim fees and expenses, respectively, of Akin, Gump. By separate applica-

---

**2.** The adversary proceeding is numbered 01–4605 in the Delaware Bankruptcy Court.

**3.** Since there is no stay pending the appeal of the cash collateral order, this court retains jurisdiction to implement its terms. *See In re*

*Prudential Lines, Inc.,* 170 B.R. 222, 243 (S.D.N.Y.1994) ("[W]hile an appeal of an order or judgment is pending, the court retains jurisdiction to implement or enforce the order or judgment").

tion, the debtor sought $21,304.50 and $2,350.77 for the interim fees and expenses, respectively, of Zeisler & Zeisler. The IRS objected for essentially same unpersuasive reasons it raised in opposition to the debtor's motion for the cash collateral carve out, *i.e.*, that the debtor lacks standing to defend the Delaware adversary proceeding, has an actual conflict of interest, and is administratively insolvent. *See May 1, 2002 hearing record* at 2:44, 2:50, 3:42, 3:52, and *December 3, 2002 hearing record* at 11:02, 11:04, 11:12, 11:40, 11:46. On December 3, 2002, the Akin, Gump application was bifurcated, so that, consistent with the order transferring the adversary proceeding, *see supra,* slip op. at 3, the Delaware Bankruptcy Court would assess the fees and expenses incurred there, and this court would review only those matters as to which jurisdiction was retained.

Accordingly, IT IS ORDERED that subject to adjustment and disgorgement, Akin, Gump is allowed interim fees of $139,433.50 and expenses of $4,625.01, and Zeisler & Zeisler is allowed interim fees of $21,304.50 and expenses of $2,350.77. *See* 11 U.S.C. § 331; and

IT IS FURTHER ORDERED, that the effective date of this order shall be 30 days from this date without prejudice to any party to timely seek an extension for cause.